**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

KENDALL GHEE and YANG SHEN, *on behalf of*
*themselves and all others similarly situated,*

                      Plaintiffs,

                      v.

APPLE-METRO, INC., a New York corporation;
42nd APPLE, LLC d/b/a/ APPLEBEE'S
NEIGHBORHOOD GRILL & BAR, a New York
corporation; and BROADWAY APPLE, LLC
d/b/a/ APPLEBEE'S NEIGHBORHOOD GRILL
& BAR, a New York corporation,

                      Defendants.

_____

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

     Plaintiffs, KENDALL GHEE and YANG SHEN (hereinafter, "Plaintiffs"), on behalf of themselves and all others similarly situated in the United States of America, by and through their undersigned counsel, hereby bring this Class Action Complaint against Defendants, APPLE-METRO, INC., 42nd APPLE, LLC and BROADWAY APPLE, LLC (collectively, Defendants) and allege the following upon their own knowledge, or where they lack personal knowledge, upon information and belief, including the investigation of their counsel:

## NATURE OF THE ACTION

1.      Defendant APPLE-METRO, INC. operates a chain of approximately 37 Applebee's Restaurants in New York City and the surrounding area. These restaurants are subject to operational standards established by Defendants, including pricing. Defendants 42nd APPLE, LLC and BROADWAY APPLE, LLC operate the 42nd Street and 50th Street Applebee's Restaurants (respectively the "Times Square location" and the "Broadway location", collectively the "Restaurants") in central Manhattan. These two restaurants engage in deceptive pricing practices. Consumers dining at the Restaurants expect that when they purchase and consume menu items listed at some advertised price, they will be billed the advertised amount, but not more. However, Defendants impose on all patrons a hidden mandatory surcharge above the advertised price for all food and drink. Defendant 42nd APPLE, LLC charges an 18% surcharge and BROADWAY APPLE, LLC charges a 15% surcharge.

2.      In addition to paying the purchase price for goods, American consumers are accustomed to tipping restaurant staff for good service by voluntarily paying them a percentage of their total bill as a gratuity or "tip," with 99% of American consumers reporting that they typically give tips when dining at full-service restaurants.[1] Different people choose to tip different amounts, with 42% typically giving 15% or less, 44% typically giving 16-20%, and 13% typically giving more than 21%.[2] While there are differences from person to person

---

[1] *See* **EXHIBIT A**, an American Express restaurant industry newsletter reporting the results of a survey of 500 consumers representative of the U.S. population. http://technomic.tm00.com/technomic/newsletters/images/MarketBriefingAugust2014.pdf (last accessed March 17, 2017).
[2] *Ibid.*

regarding average given tip amount, etiquette guides all recommend that gratuity be voluntary and based on the quality of service received.[3]

3.     Tax law recognizes that tipping is optional and that consumers tip different amounts. The IRS generally requires large restaurants to pay employment taxes on the assumption that customers tipped at least 8% of their total bill on average per year.[4] This takes into account the variability among gratuities collected by different servers. This average also takes into account that during some months, total gratuities could be lower than 8% of the bill for a server, while during other months, total gratuities could be higher. The legal structure of the United States tax code is in harmony with the habits of American consumers as well as the recommendations of etiquette guides: consumers tip their servers by paying them an extra amount based on their total bill and quality of service. This tip can be low or zero in some cases, but in the long run every server can expect to earn on average at least 8% of the cost of the food and drink they served as tips.

4.     Notwithstanding this culture of voluntary tipping, Defendants require customers to pay an unadvertised mandatory surcharge in addition to the listed price of food and drink. This surcharge is hidden from consumers until after they have already eaten and are paying their bill at tabletop point-of-sale terminals. Consumers at the Times Square location who attempt to pay a

---

[3] *See* e.g. money.cnn.com, (15% of bill (excl. tax) for adequate service; 20% for very good service; no less than 10% for poor service) http://money.cnn.com/pf/features/lists/tipping/ (last accessed March 17, 2017); Tripadvisor.com (For waiters at sit-down restaurants … the tip should be calculated as a percentage of your total bill as follows: 10% usually means you aren't totally happy, 15% usually means all was acceptable, 20% for excellent, over 20% for outstanding.  15-20 percent is considered standard in most communities); https://www.tripadvisor.com/Travel-g191-s606/United-States:Tipping.And.Etiquette.html (last accessed March 17, 2017); money.usnews.com (Tipping at a restaurant. If you're really pleased with your service, most experts will tell you to tip 20 percent. If you think the service was bad but not terrible, put down 10 percent. If you think the service was abominable, you can feel good about not leaving a tip) http://money.usnews.com/money/personal-finance/articles/2013/05/16/your-ultimate-tipping-guide (last accessed March 17, 2017).

[4] *See* **EXHIBIT B**, IRS Tax Topic 761 and IRS Form 8027.

gratuity of less than 18% by credit card are not allowed to do so; consumers at the Broadway location who attempt to pay a gratuity of less than 15% by credit card are not allowed to do so.

5.     This surcharge is misleadingly called a "tip" on the customer's receipt and electronic bill, falsely indicating that the payment is optional. Customers who voluntarily pay the surcharge, or who pay more than the surcharge, are misled into believing that the entire amount is a discretionary gratuity, when only money in excess of the surcharge amount is actually discretionary. The 18% surcharge at the Times Square location and the 15% surcharge at the Broadway location are compulsory. Customers who try to pay less than the surcharge amount will be unable to close out their bill, and are forced to pay a supposedly discretionary gratuity of 18% (at the Times Square location) or 15% (at the Broadway location).

6.     Defendants violate laws against false advertising by advertising prices that are literally false because they exclude the mandatory surcharge. Defendants fail to provide notice in any form to all consumers that they are subject to the mandatory surcharge until after they have eaten and are legally required to pay their bill. At neither of the restaurants are there any postings at the locations or on the menus that would provide customers notice of the mandatory surcharge.

7.     As part of their extensive and comprehensive nationwide marketing campaign, Defendants actively promote their restaurants as high-value by advertising relatively low food and drink prices. The price representations are central to the marketing of the Defendants' restaurants. *See* **EXHIBIT C**. Because Defendants charge an additional 18% (at the Times Square location) or 15% (at the Broadway location) above the advertised price, all of these advertisements contain false, deceptive and misleading statements regarding price.

8.     By making false, deceptive and misleading statements to consumers, Defendants have deceived hundreds of thousands of consumers into purchasing food and drink at a low

advertised price, after which Defendants billed consumers a higher price once the food and drink had been consumed.

9.    Defendants falsely itemized customers' bills by calling their surcharge a "tip," disguising the fact that the surcharge is a mandatory surcharge and is not optional.

10.    At all material times hereto, Plaintiffs and other consumers have been deceived into spending significant amounts of money on food and drink as a surcharge in excess of the advertised price. Plaintiffs and other members of the Classes (as defined below), have been harmed by Defendants' fraudulent misrepresentations on the price of its food and drink.

11.    As shown in **EXHIBIT D**, representations about food and drink prices are clearly and prominently displayed on the Restaurant menus, where they cannot be missed by consumers. There is no warning that a surcharge is mandatory in addition to the price of the food and drink.

12.    As shown in **EXHIBIT E** (the receipt from Plaintiff GHEE'S first visit to the Times Square location), **EXHIBIT F** (the receipt from Plaintiff GHEE'S second visit to the Times Square location), and **EXHIBIT G** (the receipt from Plaintiff SHEN'S visit to the Broadway location), the surcharge is mischaracterized on customer receipts and electronic bills as a "tip." The fact that the restaurant does not permit customers to pay less than the bill plus the surcharge is hidden from consumers. If consumers knew that the surcharge was mandatory and not a mere suggested tip amount, they would not have been willing to pay the unfair surcharge because they did not receive prior notice of such an obligation. As such, the surcharge is a one-sided assessment that is not legally enforceable because there was never any meeting of the minds to establish a binding contract, so all such amounts must be reimbursed to all consumers.

13.    This lawsuit seeks redress for the deceptive manner in which Defendants have marketed and continue to market its food and drink to the general public. Plaintiffs bring this

proposed consumer class action individually and on behalf of all other persons similarly situated, who, from the applicable limitations period of six years up to and including the present ("Class Period"), purchased Applebee's® food and/or drink for consumption and not resale at the Restaurants and paid by credit or debit card.

14.    Plaintiffs seek to secure, among other things, equitable and declaratory relief, restitution, and alternative damages, for similarly situated United States purchasers, against Defendants, for violating New York statutes that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes include New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349, and New York's False Advertising Law, Gen. Bus. Law § 350.

15.    Defendants have deceived Plaintiffs and other consumers nationwide by misrepresenting the pricing of their menu items and failing to provide any notice of the mandatory 18% surcharge.

16.    Plaintiffs expressly do not seek to contest or enforce any state law that has requirements beyond those required by federal laws or regulations.

**JURISDICTION AND VENUE**

17.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

18.    The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States.

19. The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

20. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

21. This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendants, pursuant to New York Statute N.Y. CVP. Law § 302, because it conducts substantial business in this District, some of the actions giving rise to the Complaint took place in this District, and some of Plaintiff's claims arise out of Defendants operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to person or property in this state arising out of Defendants' acts and omissions outside this state. Additionally, this court has personal jurisdiction over Defendants because its food and drink is advertised, marketed, distributed, and sold throughout New York State; Defendants engaged in the wrongdoing alleged in this Complaint throughout New York State; and Defendants have sufficient minimum contacts with New York and/or otherwise have intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants is engaged in substantial and not isolated activity within New York State.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendants have caused harm to class members residing in this District, and the Defendants is

residents of this District under 28 U.S.C. 1391(c)(2) because it is subject to personal jurisdiction in this district.

**PARTIES**

*Plaintiffs*

23.    Plaintiff KENDALL GHEE is, and at all times relevant hereto has been, a citizen of the State of New York and resides in Kings County. On October 19, 2016 (the "first visit"), Plaintiff GHEE purchased food at the Applebee's Neighborhood Grill and Bar at 234 W 42nd St, New York, NY 10036 (the "Times Square location") within the State of New York. The total bill before taxes was approximately $17.38. Before paying, GHEE was asked to select a tip amount on Defendants' iPad-like tabletop credit card reader. Plaintiff GHEE did not change the default amount of 18% (approximately $3.13) because he was satisfied with the food and service and was willing to pay an 18% tip. Plaintiff GHEE was not willing to pay any hidden service charge. Plaintiff GHEE was not informed that the money he had left as a tip was in fact a mandatory hidden service charge of 18%. Plaintiff GHEE reasonably relied on the characterization of his payment as a "tip" when he decided to pay 18% more for his food than the amount listed on the menu.

24.    On November 8, 2016 (the "second visit"), Plaintiff GHEE purchased food at the Times Square location. The total bill before taxes was $12.59. Plaintiff GHEE was induced to purchase the food based on the advertised price and was financially injured as a result of Defendants' deceptive conduct as alleged herein. At the time he ordered his food, Plaintiff GHEE did not know that Defendants would mandatorily assess 18% of the advertised price of his food to his bill as a mandatory surcharge. Plaintiff GHEE would not have purchased the food had he known that the advertised prices were false and deceptive. Plaintiff GHEE was not satisfied with the food and service and so attempted to leave a smaller tip than 18%, but Defendants' payment system would

8

not allow him to pay less than the price of the food plus the 18% service charge. *See* **EXHIBIT H**. Plaintiff GHEE relied on and was reasonably misled by Defendants' mischaracterization of the price of its food in advertisements and on menus. Plaintiff GHEE suffered injury in fact and lost money as a result of Defendants' deceptive, false and misleading practices as described herein. Plaintiff GHEE was not willing to pay any hidden service charge at either of his visits.

25.     Plaintiff YANG SHEN is, and at all times relevant hereto has been, a citizen of the State of New Jersey and resides in Essex County. On February 19, 2017, Plaintiff SHEN purchased food at the Applebee's Neighborhood Grill and Bar at 205 W 50th St, New York, NY 10019 (the "Broadway location") within the State of New York. The total bill before taxes was approximately $17.29. At the time he ordered his food, Plaintiff SHEN did not know that Defendants would mandatorily assess 15% of the advertised price of his food to his bill as a mandatory surcharge. Plaintiff SHEN would not have purchased the food had he known that the advertised prices were false and deceptive. Before paying, SHEN was asked to select a tip amount on Defendants' iPad-like tabletop credit card reader. Plaintiff SHEN attempted to change the default amount to below 15% (approximately $2.60) because he was not satisfied with the food and service and was not willing to pay a 15% tip. Plaintiff SHEN was not willing to pay any hidden service charge and had not been informed that a service charge would be added to his bill. Plaintiff was unable to close out his bill until he paid the hidden mandatory 15% surcharge. *See* **EXHIBIT I**. Plaintiff SHEN relied on and was reasonably misled by Defendants' mischaracterization of the price of its food in advertisements and on menus. Plaintiff SHEN suffered injury in fact and lost money as a result of Defendants' deceptive, false and misleading practices as described herein.

*Defendants*

26.    Upon information and belief, Defendant APPLE-METRO, INC., is a corporation organized under the laws of New York with its headquarters and an address for service of process at Attn: President, 550 Mamaroneck Ave, Harrison, New York, 10528. APPLE-METRO, INC. d/b/a/ APPLEBEE'S NEIGHBORHOOD GRILL & BAR is an Applebee's franchisee and operates approximately 35 Applebee's locations in the New York City area,[5] including the Times Square location at which Plaintiff GHEE was forced to pay an 18% surcharge and the Broadway location at which Plaintiff SHEN was forced to pay n 15% surcharge.[6]

27.    Defendant 42nd APPLE, LLC d/b/a/ APPLEBEE'S NEIGHBORHOOD GRILL & BAR is a limited liability corporation organized and existing under the laws of the State of New York with its headquarters and address for service of process at Attn: President, 550 Mamaroneck Ave, Harrison, New York, 10528. Defendant 42nd APPLE, LLC is an Applebee's franchisee and operates an Applebee's restaurant located at 234 W. 42nd Street, New York, NY 10036 (the "Times Square location").

28.    Defendant BROADWAY APPLE, LLC d/b/a/ APPLEBEE'S NEIGHBORHOOD GRILL & BAR, is a limited liability corporation organized and existing under the laws of the State of New York with its headquarters and address for service of process at Attn: President, 550 Mamaroneck Ave, Harrison, New York, 10528. Defendant BROADWAY APPLE, LLC is an Applebee's franchisee and operates an Applebee's restaurant located at 205 West 50th Street, New York, NY 10019 (the "Broadway location").

---

[5] http://www.applemetrorestaurants.com/EN/about/ (last accessed 3/7/16).
[6] http://www.hoovers.com/company-information/cs/company-profile.APPLE-METRO_INC.c5a8eef6550a28af.html?cm_ven=Biz_Dev&cm_cat=Google&cm_pla=Free&cm_ite=Factsheet (last accessed 3/7/17).

29.     Plaintiffs allege that, at all times relevant herein, the subsidiaries, affiliates, and employees of 42nd APPLE, LLC, and BROADWAY APPLE, LLC were the agents, servants and employees of APPLE-METRO, INC., and at all times relevant herein each was acting within the purpose and scope of that agency and employment. Plaintiffs further allege on information and belief that at all times relevant herein, the distributors who delivered and sold food and drink, as well as their respective employees, also were APPLE-METRO, INC.'s agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment. In addition, Plaintiffs allege that, in committing the wrongful acts alleged herein, APPLE-METRO, INC., in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase food and drink by means of untrue, misleading, deceptive, and/or fraudulent representations, and that APPLE-METRO, INC., 42nd APPLE, LLC, and BROADWAY APPLE, LLC participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

30.     Whenever reference in this Complaint is made to any act by APPLE-METRO, INC., or its subsidiaries, affiliates, distributors, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of APPLE-METRO, INC., committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of APPLE-METRO, INC., while actively engaged in the scope of their duties.

## FACTUAL ALLEGATIONS

**Franchise Restaurants**

31.    Defendants operate on a predominately "franchise" model, with individual stores owned by APPLE-METRO, INC. through holding companies. APPLE-METRO, INC. exercises operational control over the Times Square and Broadway locations through its subsidiaries 42nd APPLE, LLC and BROADWAY APPLE, LLC.

32.    Upon information and belief, Defendants actively engage in advertising Applebee's food and drink through advertisements and menus, and such marketing deceives consumers because advertised prices fail to include the mandatory surcharge. Defendants possess and exercise the authority to make changes in the policies and practices at their location and to ensure that the franchisor's standards and policies are being followed, including its advertising and pricing practices.

**Defendants' Mandatory Surcharge was Hidden from Plaintiffs and the Class**

33.    Defendants violate laws against consumer fraud and false advertising by advertising prices that are literally false because they exclude the mandatory surcharge. The price representations are central to the marketing of the Defendants' restaurants. *See* **EXHIBIT C**. Because Defendants charge an additional mandatory surcharge above the advertised price, all of these advertisements contain false, deceptive and misleading statements. Defendants' menus reflect those advertised prices, again without prominently displaying a notice that there is a surcharge. *See* **EXHIBIT D**. Defendants have deceived Plaintiff and the Classes into purchasing food and drink at low advertised prices, after which Defendants billed at a higher price once the food and drink was consumed.

34.    Defendants' deceptive representations and omissions regarding the existence of the surcharge are material in that a reasonable person would attach importance to such

information and would be induced to act upon such information in deciding whether or not to purchase food and drink. Thus, Plaintiffs' and the other Class members' reliance upon Defendant's misleading and deceptive representations may be presumed. The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and the Classes.

35.    Reasonable consumers, such as Plaintiffs and the Classes, rationally expect that when food and drink are advertised at some price and labeled on a menu as being that price, they will be billed that same price after they buy the food.

36.    The presence of pricing statements on advertisements and menus that do not take into account the mandatory surcharge makes such advertisements and menus false, misleading and likely to deceive a reasonable consumer.

37.    Plaintiffs and the Classes reasonably relied to their detriment on Defendants' false and misleading pricing misrepresentations.

38.    Reasonable consumers (including Plaintiffs and the Classes) must and do rely on restaurants such as Defendants' to honestly advertise and list prices, and corporations such as Defendants intend and know that consumers rely upon advertisements and menu labeling statements in making their purchasing decisions. Such reliance by consumers is also eminently reasonable, since companies are prohibited from engaging in deceptive acts or practices in the conduct of any business, trade or commerce under New York State law and the consumer protection laws of every state in the United States and the District of Columbia.

39.    While Defendants labeled and advertised their food and drink at one price, Defendants applied a hidden surcharge to all customer bills. The misrepresentation was

significant and material given the emphasis on price and value throughout Defendants' marketing.

**The Surcharge was Disguised as a Tip**

40.     Defendants falsely labeled the surcharge as a "tip" on the bills of Plaintiffs and the Classes in an effort to induce Plaintiff and the Classes into paying it. *See* **EXHIBITS E**, **F**, and **G**. In fact, the surcharge is not a tip that is voluntarily paid but is a mandatory service charge. Had Plaintiffs and the Classes known that they were being tricked and coerced, they would not have been willing to pay it.

41.     Merriam-Webster's Ninth New Collegiate Dictionary defines a "tip" as: "a gift or a sum of money tendered for a service performed or anticipated : GRATUITY." Merriam-Webster's Ninth New Collegiate Dictionary defines a "gratuity" as: "something given voluntarily or beyond obligation usu. in return for or in anticipation of some service; esp : TIP." Webster Ninth New Collegiate Dictionary 345 (d9th ed. 1988). To deceive consumers into believing that the surcharge is voluntary, Defendants falsely label it a "tip."

42.     In deciding whether or not to pay a voluntary tip, reasonable consumers would consider it important whether they are obligated to pay a mandatory surcharge and whether a merchant had deceptively hidden such surcharge from them. Defendants' deceptive representations and omissions regarding the mandatory nature of the surcharge are material in that a reasonable person would attach importance to such information and would be induced to act upon such information. Thus, Plaintiffs' and the other Class members' reliance upon Defendant's misleading and deceptive representation of the surcharge as a tip may be presumed. The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiffs and the Classes.

14

43.     Reasonable consumers, such as Plaintiffs and the Classes, rationally expect that when an item on their bill is labeled as a "tip" it is in fact voluntary and that they may choose to pay it or not pay it. Such consumers might agree to pay an itemized tip listed in their bill when they would not have agreed to pay a hidden surcharge fee. Such consumers only agree to pay the service charge labeled as a "tip" because they believe it to be a tip – i.e. a voluntary gratuity.

44.     The presence of the "tip" label on customer's electronic bills makes such bills false, misleading and likely to deceive a reasonable consumer.

45.     Plaintiffs and the Classes reasonably relied to their detriment on Defendants' false and misleading misrepresentation of the surcharge as a tip.

46.     Reasonable consumers (including Plaintiffs and the Classes) must and do rely on restaurants such as Defendants' to honestly itemize bills, and companies such as Defendants' intend and know that consumers are frequently willing to pay tips equal to or in excess of 18% (at the Times Square location) or 15% (at the Broadway location), but only if the customers believe that they are choosing the amount they pay. Such reliance by consumers is also eminently reasonable, since companies are prohibited from engaging in deceptive acts or practices in the conduct of any business, trade or commerce under New York state law. The misrepresentation was significant and material given consumers' willingness to pay gratuities and consumers' unwillingness to be tricking into paying a higher price for food and drink that they had agreed to purchase at a lower price.

47.     As a result of Defendants' deception, consumers – including Plaintiffs and members of the proposed Class – have purchased food and drink relying on the advertised menu price, and then were billed that amount plus a hidden surcharge of 18% (at the Times Square

location) or 15% (at the Broadway location). Plaintiffs and members of the proposed Class then relied on the characterization of the surcharge as a "tip" in ultimately deciding to pay it.

**Plaintiffs Relied on Defendants' Claims and Were Injured**

48.    Within the last twelve months, Plaintiffs were attracted to Applebee's Neighborhood Grill & Bar because they preferred to consume high-value food and drink at establishments that were relatively low-cost.

49.    Plaintiffs believed that the food would be cheaper than similar fare at other restaurants would be, as promised by Defendants' menu and marketing campaign advertising prices and emphasizing value.

50.    On Plaintiff GHEE'S first visit to the Times Square location, he was presented with his bill on Defendants' iPad-like tabletop credit card reader. Defendants asked GHEE to "SELECT YOUR TIP" in either a custom amount or as a percentage of his bill. Plaintiff GHEE was satisfied with the food and service and GHEE did not change the default tip amount from 18% of his bill (approximately $3.13). Defendants' practice is to collect at least 18% above the listed cost of every bill as a mandatory service charge. Upon information and belief, Defendants had this policy during Plaintiff GHEE's first visit, and disguised the mandatory 18% surcharge as a tip by labeling it a "tip" on GHEE's bill. Plaintiff GHEE would not have been willing to pay any hidden mandatory service charge, and only paid 18% more than the listed cost of his bill because he thought it was an optional tip.

51.    On Plaintiff GHEE'S second visit to the Times Square location, he was again presented with his bill on Defendants' iPad-like tabletop credit card reader. Plaintiff GHEE was not satisfied with the food or service and attempted to leave a custom amount lower than 18% as a tip. At that time, he learned that Defendants always charge a mandatory 18% service charge

and that he would not be permitted to pay any less. In effect, every item on the menu really cost 18% more than it was advertised at.

52.     On Plaintiff SHEN'S visit to the Broadway location, he was presented with his bill on Defendants' iPad-like tabletop credit card reader. Plaintiff SHEN was not satisfied with the food or service and attempted to leave an amount lower than 15% as a tip. At that time, he learned that Defendants always charge a mandatory 15% service charge and that he would not be permitted to pay any less. In effect, every item on the menu really cost 15% more than it was advertised at.

53.     Granted that they were not allowed to choose their own tip amount as a consequence of the design of the payment system, Plaintiffs were forced to pay the surcharge – 18% and 15%, respectively.

54.     New York has placed requirements on companies that are designed to ensure that the claims they are making about their products to consumers are truthful and accurate.

55.     Defendants' labeling and advertising of the food and drink violates New York consumer protection laws against deceptive acts and practices in the conduct of business.

56.     Although Defendants marketed their food and drink based on price, they failed to also disclose material information about the cost of the food; the fact that there was a surcharge and that the surcharge as listed on the bill was not optional. These non-disclosures, while at the same time marketing the food based on a listed price excluding the surcharge, were deceptive and likely to mislead a reasonable consumer.

57.     Plaintiffs did, and a reasonable consumer would, attach importance to whether Defendants' advertising and billing scheme is deceptive or misleading and therefore unlawful.

58.     Plaintiffs did not know, and had no reason to know, that there was a mandatory hidden surcharge.

59.     Defendants' prices as listed in advertisements and on menus were a material factor in Plaintiffs' and Class members' decisions to choose to eat at Defendants' restaurants and to purchase the type and quantity of food that they purchased. Relying on Defendants' misleading advertisements and menu, Plaintiffs and Class members believed that they were getting food at a lower price than they ultimately paid. Had Plaintiffs and the Classes known Defendants' food and drink would cost more than promised, they would not have purchased them.

60.     Defendants' itemization of the surcharge as a "tip" on customer bills was a material factor in Plaintiffs' and Class members' payment of the surcharge. Relying on Defendants' itemization, Plaintiffs and Class members believed that the surcharge, wrongfully hidden by Defendants, was actually optional because it was ostensibly a tip. Had Plaintiffs and the Classes known Defendants' surcharge was mandatory, they would not have paid it.

61.     Defendants' price labeling as alleged herein is deceptive and misleading and was designed to increase sales of food and drink above what it would have been if listed at its true price, including the surcharge. Defendants' misrepresentations are part of its systematic pricing, advertising, and billing practice.

62.     At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the food and drink were deceptively priced as set forth herein, and would not have bought the food and drink had they known the truth about them.

63.     As a result of Defendants' misrepresentations, Plaintiffs and thousands of others throughout the United States purchased food and drink from Defendants' restaurants.

64.     Plaintiffs and the Classes (defined below) have been damaged by Defendants' deceptive and unfair conduct in that they purchased food with false and deceptive labeling and paid a surcharge above the advertised menu prices they had agreed to pay.

## CLASS ACTION ALLEGATIONS

65.     Plaintiffs seek relief in their individual capacity and as representatives of all others who are similarly situated. Pursuant to Rule 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seeks certification of the following classes:

    i.   <u>The Nationwide Class</u>
All persons in the United States who have made retail purchases by credit or debit card of Applebee's food and drink with deceptive menu prices at the Restaurants, as set forth herein, during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

    ii.   <u>The New York Class</u>
All persons in New York who have made retail purchases by credit or debit card of Applebee's food and drink with deceptive menu prices at the Restaurants, as set forth herein, during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

66.     Excluded from these Classes are current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

67.     Plaintiffs reserve the right to revise the Class definitions based on facts learned in the course of litigating this matter.

68.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

69.    **Numerosity:** Each Class is so numerous that individual joinder of all class members is impracticable. The precise number of members of the Classes is unknown to Plaintiffs, but it is clear that the number greatly exceeds the number that would make joinder practicable, particularly given Defendants' comprehensive nationwide distribution and sales network. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

70.    **Commonality and Predominance:** This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes. All members of the Classes were exposed to Defendants' deceptive and misleading prices because those claims were next to every menu item. Furthermore, common questions of law or fact include:

a. whether prices on advertisements and menus were false and misleading because they excluded the surcharge;

b. whether labeling the surcharge a "tip" was false and misleading;

c. whether Defendants engaged in a marketing practice intended to deceive consumers;

d. whether Defendants deprived Plaintiffs and the other members of the Classes of the benefit of the bargain because Defendants billed more than was promised;

e. whether Defendants have been unjustly enriched at the expense of Plaintiffs and other Class members by their misconduct;

f. whether Defendants must disgorge any and all profits it has made as a result of their misconduct;

g. whether Defendants should be barred from marketing its prices without including all surcharges and/or fees, however characterized; and

h. whether Defendants should be barred from mislabeling surcharges as "tips."

71.     Defendants engaged in a common course of conduct in contravention of the laws sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

72.     **Typicality:** Plaintiffs' claims are typical of those of the members of the Classes because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs patronized Defendants' restaurants and sustained similar injuries arising out of Defendants' conduct in violation of New York State law. Defendants' unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Classes were caused directly by Defendants' wrongful misconduct. In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Classes. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Classes and are based on the same legal theories.

73.     **Adequacy:** Plaintiff will fairly and adequately represent and pursue the interests of the Class and has retained competent counsel experienced in prosecuting nationwide class actions. Plaintiffs understand the nature of his claims herein, have no disqualifying conditions,

and will vigorously represent the interests of the Classes. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Classes. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Classes. Plaintiffs and Plaintiffs' counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Classes and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the members of the Classes.

74. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Classes to individually seek redress for Defendants' wrongful conduct. Even if the members of the Classes could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the members of the Classes' claims and the absence of material or dispositive differences in the statute and common laws upon which the claims are based when such claims are grouped as proposed above and below, the Nationwide Class and New York Class will be easily managed by the Court and the parties.

75.     **Declaratory and Injunctive Relief:** The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

76.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

77.     Defendants' conduct is generally applicable to the Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

78.     Further, in the alternative, the Classes may be maintained as class actions with respect to particular issues, pursuant to Fed.R.Civ.P. 23(c)(4).

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)
(Brought on Behalf of the New York Class)**

79.     Plaintiffs GHEE and SHEN reallege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint and further allege as follows:

80.     Plaintiffs GHEE and SHEN bring this claim on behalf of themselves and the other members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL").

81.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

82.     To establish a claim under NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error.  Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

83.     Any person who has been injured by reason of any violation of the NY GBL may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

84.     The practices employed by Defendants, whereby Defendants advertised, promoted, and marketed that their food and drink cost the listed price and then characterized their hidden surcharge as a "tip" was unfair, deceptive, and misleading to Plaintiffs and other New York Class members and in violation of NY GBL § 349 for, inter alia, one or more of the following reasons:

    a.   Defendants engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the prices of their food and drink and nature of their surcharge, which did, or tended to, mislead Plaintiffs and the New York Class about facts that could not reasonably be known by them;

b. Defendants knowingly and falsely represented and advertised lower prices for their food and drink than their food and drink really had with an intent to cause Plaintiffs and members of the New York Class to believe that the price was no more than the listed price;

c. Defendants knowingly and falsely represented that their hidden surcharge was a "tip" with an intent to cause Plaintiffs and members of the New York Class to believe that the surcharge amount would go to the serving staff;

d. Defendants failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

e. Defendants caused Plaintiffs and the New York Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through their conduct;

f. Defendants failed to reveal material facts to Plaintiffs and the New York Class with the intent that Plaintiff and the New York Class members rely upon the omission;

g. Defendants made material representations and statements of fact to Plaintiffs and the New York Class that resulted in Plaintiffs and the New York Class reasonably believing the represented or suggested state of affairs to be other than what they actually were; and

h. Defendants intended that Plaintiffs and the members of the New York Class rely on their misrepresentations and omissions, so that Plaintiff and New York Class members would purchase the food and drink and pay the surcharge.

85.    The foregoing deceptive acts and practices were directed at customers.

25

86.     Under all of the circumstances, Defendants' conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

87.   Defendants' actions impact the public interest because Plaintiff and members of the New York Class were injured in exactly the same way as thousands of others who purchased food and drink as a result of and pursuant to Defendants' generalized course of deception.

88.     Plaintiffs GHEE and SHEN and other Class members seek to enjoin such unlawful, deceptive acts and practices as described above. Each of the Class members will be irreparably harmed unless the unlawful, deceptive actions of Defendants are enjoined in that Defendants will continue to falsely and misleadingly advertise its prices excluding the surcharge and Defendants will continue to falsely and misleadingly trick consumers into paying it by characterizing it as a "tip." Plaintiffs GHEE and SHEN believed Defendants' representation that the food and drink would cost the amount advertised. Plaintiffs believed Defendants' representation that the surcharge was a voluntary "tip." Plaintiffs would not have purchased the food and drink had he known that there was a hidden surcharge. Plaintiffs would not have paid the surcharge had he known that it was not a tip.

89.     Plaintiffs GHEE and SHEN were injured in fact and lost money as a result of Defendants' conduct of improperly describing the pricing of food and drink and nature of the surcharge as described herein. Plaintiffs had intended to purchase food and drink at the listed price, but were then charged a hidden surcharge. The price they ultimately paid was consequently more than the value of the food and drink he received.

90.     Plaintiffs GHEE and SHEN and New York Class members seek declaratory relief, a judgment enjoining Defendants' from continuing to disseminate their false and misleading

statements and awarding costs of this proceeding and attorneys' fees, as provided by NY GBL §

349, and other relief allowable under NY GBL § 349.

## COUNT II

### DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)
### (Brought on Behalf of the New York Class)

91.    Plaintiffs GHEE and SHEN reallege and incorporates by reference the allegations

contained in all preceding paragraphs and further allege as follows:

92.    Plaintiffs GHEE and SHEN bring this claim individually and on behalf of the

other members of the Class for violations of NY GBL § 349.

93.    Any person who has been injured by reason of any violation of NY GBL § 349

may bring an action in her own name to enjoin such unlawful act or practice, an action to recover

her actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in

its discretion, increase the award of damages to an amount not to exceed three times the actual

damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly

violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

94.    By the acts and conduct alleged herein, Defendants committed unfair or deceptive

acts and practices by misbranding their food and drink as cheaper than it is.

95.    The practices employed by Defendants, whereby Defendants advertised,

promoted, and marketed that its food and drink cost some listed price but then charged a higher

price including an additional mandatory surcharge, were unfair, deceptive, and misleading to

Plaintiffs and other New York Class members and in violation of NY GBL § 349.

96.    The practices employed by Defendants, whereby Defendants characterized their

hidden mandatory surcharge as a "tip" were unfair, deceptive, and misleading to Plaintiffs and

other New York Class members and in violation of NY GBL § 349.

27

97.     The foregoing deceptive acts and practices were directed at consumers.

98.     Plaintiffs GHEE and SHEN and the other Class members were injured in fact and lost money as a result of Defendants' deceptive and unfair trade acts. Specifically, Plaintiffs lost money as a result of Defendants' conduct of improperly describing the pricing of food and drink and the nature of the surcharge as described herein. Plaintiffs had intended to purchase food and drink at the listed price, but were then charged a hidden surcharge. The price they ultimately paid was consequently more than the value of the food and drink they received. In order for Plaintiffs and New York Class members to be made whole, they need to receive restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs, and other relief allowable under NY GBL § 349.

### COUNT III

### DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
### (FALSE ADVERTISING UNLAWFUL)
### (Brought on Behalf of the New York Class)

99.     Plaintiffs GHEE and SHEN reallege and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

100.    Plaintiffs GHEE and SHEN brings this claim individually, as well as on behalf of members of the Nationwide Class or, alternatively, the New York class, for violations of NY GBL § 350.

101.    Defendants have been and/or is engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

102.    New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into

account "the extent to which the advertising fails to reveal facts material in light of …

representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

103.   Defendants caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers and New York Class.

104.   Defendants' affirmative misrepresentations and misrepresentations by way of omission, as described in this Complaint, were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the food and drink were and continue to be exposed to Defendants' material misrepresentations.

105.   Defendants have violated N.Y. Gen. Bus. Law § 350 because the misrepresentations and/or omissions regarding prices of food and drink, as set forth above, were material and likely to deceive a reasonable consumer.

106.   Plaintiffs GHEE and SHEN and members of the New York Class have suffered an injury, including the loss of money or property, as a result of Defendants' false and misleading advertising. In purchasing Defendants' food and drink, Plaintiffs and members of the New York Class relied on the misrepresentations and/or omissions relating to the price of the food and drink. Those representations were false and/or misleading because the food and drink have a hidden surcharge. Had the New York Class known this, they would not have purchased food and drink at Defendants' restaurants and would not have paid the surcharge.

107.   Plaintiffs GHEE and SHEN and members of the New York Class have suffered an injury, including the loss of money or property, as a result of Defendants' false and misleading advertising. In paying Defendants' hidden surcharge, Plaintiffs and members of the

New York Class relied on the misrepresentations and/or omissions relating to the nature of the surcharge. Those representations were false and/or misleading because the surcharge is not really a "tip" because it is mandatory. Had the New York Class known this, they would have insisted on not paying the hidden service charge.

108.    Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiffs GHEE and SHEN and members of the New York Class seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV

## BREACH OF CONTRACT
**(Brought on Behalf of the Nationwide Class or, Alternatively, the New York Class)**

109.    Plaintiffs GHEE and SHEN reallege and incorporate by reference the allegations contained in all preceding paragraphs and further allege as follows:

110.    Plaintiffs GHEE and SHEN bring this claim individually, as well as on behalf of members of the Nationwide Class or, alternatively, the New York class, for breach of contract.

111.    Plaintiffs' orders from Defendants' menu manifested assent to pay the price listed on the menu, but no more, for the ordered food and drink.

112.    After the food and drink were consumed, Defendants breached the contract by charging Plaintiff and the Classes a flat surcharge in excess of the listed prices. This surcharge is added to all orders.

113.    Plaintiffs would not have purchased the food and drink had they known of the true price. Plaintiffs were damaged in an amount equal to the difference between the listed price that they agreed to pay and the price plus surcharge that they were forced to pay.

114.    As a result of the breach of these warranties, Plaintiff GHEE and the New York Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate by the Court.

## COUNT V

### DECLATORY RELIEF IS WARRANTED UNDER 28 U.S. CODE § 2201
**(Brought on Behalf of the Nationwide Class or, Alternatively, the New York Class)**

115.    Plaintiffs GHEE and SHEN reallege and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

116.    Plaintiffs GHEE and SHEN bring this claim individually, as well as on behalf of members of the Nationwide Class or, alternatively, the New York class.

117.    There is an actual controversy between Plaintiffs, the Class members, and Defendants concerning the propriety of Defendants' labeling and advertising of their food and drink prices and Defendants' labeling of their surcharges, as specified herein.

118.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

119.    Plaintiffs are interested parties who seek a declaration of their rights and legal relations with respect to Defendants with regard to the assessment of Defendants' surcharges in amounts that are greater than the prices specified by Defendants, which Defendants applied to Plaintiffs' bills without providing adequate prior notice of the surcharge.

## COUNT VI

### NEGLIGENT MISREPRESENTATION
**(Brought on Behalf of the Nationwide Class or, Alternatively, the New York Class)**

120.    Plaintiffs GHEE and SHEN reallege and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

31

121.    Plaintiffs GHEE and SHEN bring this claim individually, as well as on behalf of members of the Nationwide Class or, alternatively, the New York class, for negligent misrepresentation.

122.    In the alternative, Plaintiffs GHEE and SHEN bring this claim individually as well as on behalf of the New York Class under New York law.

123.    Defendants, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class. Defendants have negligently represented that food and drink from their restaurants cost the advertised and listed prices when, in fact, there is a hidden surcharge on all food and drink. Defendants have negligently represented that the surcharge is a tip.

124.    In making the representations of fact to Plaintiffs GHEE and SHEN and members of the Classes described herein, Defendants have failed to fulfill their duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendants' negligence and carelessness.

125.    Defendants, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendants made and intended the misrepresentation to induce the reliance of Plaintiffs GHEE and SHEN and members of the Classes.

126.    Plaintiffs GHEE and SHEN and members of the Classes relied upon these false representations and nondisclosures by Defendants when purchasing food and drink at the Restaurants, which reliance was justified and reasonably foreseeable.

127.    As a result of Defendants' wrongful conduct, Plaintiff GHEE and members of the Classes have suffered and continue to suffer economic losses and other general and specific

damages, including but not limited to the surcharge they would not otherwise have paid, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

## COUNT VII

### UNJUST ENRICHMENT
**(Brought on Behalf of the Nationwide Class or, Alternatively, the New York Class)**
**(Pleaded in the Alternative)**

128.    Plaintiffs GHEE and SHEN reallege and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

129.    Plaintiffs GHEE and SHEN assert this claim in the alternative in the event that the Court concludes that Plaintiffs lack an adequate remedy at law.

130.    Plaintiffs GHEE and SHEN bring this claim individually, as well as on behalf of members of the Nationwide Class. Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the Defendants was unjustly enriched. At the core of each state's law are two fundamental elements – the Defendants received a benefit from the plaintiff and it would be inequitable for the Defendants to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, New York law may be applied to the claims of the Nationwide Class.

131.    In the alternative, Plaintiffs bring this claim individually as well as on behalf of the New York Class under New York law.

132.    At all times relevant hereto, Defendants deceptively advertised and listed prices without including an 18% (at the Times Square location) or 15% (at the Broadway

location) surcharge that Defendants added to all consumers' bills. Defendants deceptively labeled the surcharge a "tip" to induce payment.

133.    Plaintiffs GHEE and SHEN and members of the Classes reasonably relied on Defendants' price representations, and in reasonable reliance thereon, purchased food and drink.

134.    Plaintiffs GHEE and SHEN and members of the Classes reasonably relied on Defendants' representation of the surcharge as a "tip" and so did not realize they had been charged a surcharge. In reasonable reliance on Defendants' representation, Plaintiff and the Classes paid the amount of the surcharge believing that it was a tip.

135.    Plaintiffs GHEE and SHEN and members of the Classes conferred upon Defendants non-gratuitous payments due to Defendants' deceptive labeling, advertising, and marketing. Plaintiffs GHEE and SHEN and members of the Classes would not have purchased food and drink from Defendants if they had known that Defendants would charge a surcharge of 18% in excess of menu prices. Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Classes, with full knowledge and awareness that, as a result of Defendants' deception, Plaintiffs and members of the Classes were not receiving food and drink at the prices that had been represented by Defendants and reasonable consumers would have expected.

136.    Defendants have been unjustly enriched in retaining the revenues derived from purchases of Defendants' food and drink by Plaintiffs GHEE and SHEN and members of the Classes, which retention under these circumstances is unjust and inequitable because Defendants misrepresented the prices of their food and drink and then misrepresented the beneficiaries of the hidden surcharge, which caused injuries to Plaintiffs and members of the

Classes because they were not receiving food and drink at the prices that had been represented by Defendants and reasonable consumers would have expected.

137.    Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiffs GHEE and SHEN and members of the Classes under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendants must pay restitution to Plaintiff GHEE and members of the Classes for its unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seek judgment against Defendants, as follows:

a.    An Order that this action be maintained as a class action and appointing Plaintiffs as  representatives of the Nationwide Class and/or the New York Class;

b.    An Order appointing the undersigned attorney as class counsel in this action;

c.    Restitution and disgorgement of all amounts obtained by Defendants as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.    All recoverable compensatory and other damages sustained by Plaintiffs and the Classes;

e.    Actual and/or statutory damages for injuries suffered by Plaintiffs and the Classes and in the maximum amount permitted by applicable law;

f.    An order (i) requiring Defendants to immediately cease its wrongful conduct as set forth in this Complaint; (ii) enjoining Defendants from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein;

(iii) ordering Defendants to engage in a corrective advertising campaign; and (iv) requiring Defendants to reimburse Plaintiffs and all members of the Classes the surcharge they paid;

g.   Statutory pre-judgment and post-judgment interest on any amounts;

h.   Payment of reasonable attorneys' fees and costs; and

i.   Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.

Dated: March 20, 2017

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

By:  ___/s/ C.K. Lee_____
        C.K. Lee

36