**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

KENDALL GHEE and YANG SHEN,       **:**

*individually and on behalf of all others*   **:**

*similarly situated,*                   **:**

                                 **:**    Case No. 1:17-cv-05723-JPO

              Plaintiffs,      **:**

                               **:**

            - against -       **:**

                               **:**

APPLE-METRO, INC., a New York      **:**

corporation; 42nd APPLE, LLC, d/b/a/

APPLEBEE'S NEIGHBORHOOD GRILL &

BAR a New York corporation; and

BROADWAY APPLE, LLC,

d/b/a/ APPLEBEE'S NEIGHBORHOOD

GRILL & BAR, a New York corporation;

              Defendants.

------------------------------------------------------- x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION AND STATEMENT OF FACTS ...................................................... 1

LEGAL STANDARDS ................................................................................................ 4

    A.   Standard of Review for 12(c) Motion for Judgment on the Pleadings ................... 4

    B.   Standard of Review for NY GBL §§ 349 and 350................................................. 5

LEGAL ARGUMENT .................................................................................................. 6

    C.   The Mandatory Surcharge Was Not Disclosed................................................... 6

    D.   The Mandatory Surcharge Was Not Optional ..................................................... 8

        1.  Reliance is Not an Element of Plaintiffs' Claims........................................... 10

        2.  The Voluntary Payment Doctrine Does Not Bar Plaintiffs' Claims .............. 10

        3.  Defendant's Optionality Argument Should be Given No Weight in a Motion
            for Judgment on the Pleadings ................................................................. 12

    E.   Defendant's Conduct Caused Injury to Plaintiffs and Class Members................ 12

    F.   Defendants' Cited Cases are Distinguishable ..................................................... 14

        1.  *Samiento v. World Yacht, Inc.* ..................................................................... 14

        2.  *Dimond v. Darden Rests., Inc.* .................................................................... 16

    G.   Unjust Enrichment ........................................................................................... 18

    H.   Plaintiffs Desire to Clarify their Complaint and Will Seek to Amend ................ 19

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Airgas, Inc. v. Cravath, Swaine & Moore LLP*,
No. 10-612, 2010 U.S. Dist. LEXIS 78162 ................................................................. 4

*Bauer v. Mellon Mortg. Co.*,
178 Misc. 2d 234, 680 N.Y.S.2d 397 (Sup. Ct. 1998) ............................................. 17

*BNI N.Y. v. DeSanto*,
177 Misc. 2d 9, 15, 675 N.Y.S.2d 752 (City Ct. 1998) ............................................ 17

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
100 N.Y.2d 525, 760 N.Y.S.2d 726, 790 N.E.2d 1155 (2003) ................................. 11

*Dupler v. Costco Wholesale Corp.*,
249 F.R.D. 29 (E.D.N.Y. 2008) ................................................................................ 13

*Ebin v. Kangadis Food Inc.*,
2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. Dec. 9, 2013) ........................................ 18

*Filpo v. Credit Express Furniture*,
N.Y.L.J. Aug. 26, 1997 p. 26, col. 4 (Tab B) .......................................................... 17

*Foreman v. Lowe*,
261 F. App'x 401 (3d Cir. 2008) ................................................................................ 4

*Gaidon v. Guardian Life Ins. Co. of Am.*,
94 N.Y.2d 330, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999) ................................ 5, 13

*Gimbel Bros., Inc. v. Brook Shopping Ctrs., Inc.*,
118 A.D.2d 532, 499 N.Y.S.2d 435 (App. Div. 1986) ............................................. 11

*Goldman v. Simon Prop. Grp., Inc.*,
2008 NY Slip Op 9353, 58 A.D.3d 208, 869 N.Y.S.2d 125 (App. Div.) ................... 7

*Goshen v. Mut. Life Ins. Co.*,
98 N.Y.2d 314, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (2002) .................................... 6

*Lazaroff v. Paraco Gas Corp.*,
2011 NY Slip Op 52541(U), ¶ 6, 38 Misc. 3d 1217(A), 967 N.Y.S.2d 867 (Sup. Ct.) ............. 7

*Lefkowitz v. E.F.G. Baby Products Co., Inc.*,
40 A.D.2d 364 (3d Dep't 1973) ................................................................................ 17

*MacDonell v. PHH Mortg. Corp.*,
2007 NY Slip Op 8417, 45 A.D.3d 537, 846 N.Y.S.2d 223 (App. Div.) ................... 12

*Martin v. Rest. Assocs. Events Corp.*,
2013 NY Slip Op 3304, ¶ 1, 106 A.D.3d 785, 966 N.Y.S.2d 436 (App. Div.) ........... 7

*Mayer v. Bishop*,
158 A.D.2d 878, 551 N.Y.S.2d 673 (1990) .............................................................. 18

*Negrin v. Norwest Mortg., Inc.*,
263 A.D.2d 39, 49, 700 N.Y.S.2d 184, 192 (App. Div. 1999) ................................. 17

*New World Sols., Inc. v. NameMedia Inc.*,
    150 F. Supp. 3d 287 (S.D.N.Y. 2015).................................................................. 10

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)....................................... 5

*People v. Network Assocs.*,
    195 Misc. 2d 384, 388, 758 N.Y.S.2d 466, 469 (Sup. Ct. 2003)............................... 17

*People v. Wilco Energy Corp.*,
    284 A.D.2d 469, 728 N.Y.S.2d 471, (App. Div. 2001). ......................................... 12

*Samiento v. World Yacht Inc.*,
    2008 NY Slip Op 1258, 10 N.Y.3d 70, 854 N.Y.S.2d 83, 883 N.E.2d 990) ................. 7, 14, 16

*Samiento v. World Yacht, Inc.*,
    No. 117224/05, 2006 WL 5111026 (Sup. Ct. N.Y. Cty. Aug. 18, 2006) ......................... 15, 16

*Sims v. First Consumers Nat'l Bank*,
    303 A.D.2d 288, 758 N.Y.S.2d 284 (App. Div. 2003) ............................................ 8

*Spagnola v. Chubb Corp.*,
    574 F.3d 64, (2d Cir. 2009)............................................................................ 11

*State by Lefkowitz v. Colo. State Christian Coll. of Church of Inner Power, Inc.*,
    76 Misc. 2d 50, 346 N.Y.S.2d 482 (Sup. Ct. 1973)................................................ 17

*United States Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
    2014 U.S. Dist. LEXIS 72655 (S.D.N.Y. May 23, 2014)......................................... 11

*Walts v. First Union Mortg. Corp.*,
    259 A.D.2d 322, 686 N.Y.S.2d 428 (App. Div. 1999) ............................................ 17

**Statutes**

6 RCNY § 5-59 ........................................................................................................... 17

FLSA (29 U.S.C. § 203(m))......................................................................................... 19

NY GBL § 349 ................................................................................................. passim

NY GBL § 350 ................................................................................................... 5, 10

# INTRODUCTION AND STATEMENT OF FACTS

Imagine you are trying to check out automatically from your hotel room. When you try to pay your bill, they ask if you would like to tip your housekeeper.  In your first visit, you found the experience pleasant and you choose to tip your housekeeper 18%. A month later on your second visit, you choose not to tip at all because the housekeeper did not clean up at all. However, the checkout machine in your room then informs you that you CANNOT automatically check out unless you pay the 18% service charge. You then call the front desk to complain, but nobody answers you. You are in a rush to catch a plane, you just go ahead and pay it. Thereafter, you lodge a complaint with the hotel, and they tell you that in the future, if you don't want to pay the 18% service charge, you have to call the front desk, speak to a service manager and then must wait for a front desk employee to come to your room to excise the service charge. Because of this requirement, almost nobody bothers asking for the hidden 18% service charge to be deducted. This is what is happening in this lawsuit, and it is unfair and unlawful to spring a mandatory fee on a customer who has to incur costs (possibly missing a plane or taking a taxi in order to make up the delay) to affirmatively opt out.

Defendants advertise food at one price, but Defendants then charge a different, higher price for the food after customers have already eaten it. The higher price is in the form of a hidden 18%[1] surcharge that Defendants label as a "gratuity" on customer bills and in their table-based electronic payment system. Defendants' menu prices are consequently deceptive and misleading, both because they advertise false prices and because they fail to inform consumers of the mandatory surcharge.

---

[1] Defendant 42nd APPLE, LLC charges an 18% surcharge and BROADWAY APPLE, LLC charges a 15% surcharge. For conciseness, this memo simply refers to the 18% charged by Defendant 42nd APPLE, LLC, but the legal implications are the same for either amount.

Reasonable consumers expect that they may optionally pay extra for service in the form of a voluntary gratuity, if they so choose. Consumers, including Plaintiffs, who attempt to pay less than the mandatory surcharge are blocked from doing so by Defendants' payment system. When consumers try to adjust the "gratuity" down from its pre-set level, they discover that the device does not allow them to pay less than 18%. Therefore, the item named "gratuity" on their bill isn't really a gratuity at all—it is a mandatory service charge, and consumers are forced to pay the full amount to settle their bill. Unsuspecting consumers are forced to pay more than they had bargained to pay in order to escape Defendants' restaurants.

The hidden surcharges are imposed on consumers in contravention of their bargain to pay menu prices. All consumers are equally deceived when they bargain to receive food at an advertised menu price but receive the food at a higher price. Likewise, all consumers are equally overcharged the full 18%. None had bargained to pay this ransom, but all were forced to do so, regardless of how Defendant characterizes the transaction.

The amount consumers pay to cover a mandatory surcharge is never a voluntary gratuity, only money in excess of the 18% surcharge is a gratuity, because all consumers who use Defendant's payment system must pay the hidden surcharge. Defendants withhold this material information from customers, manipulating them into conceiving of the surcharge as voluntary. However, it is thereby rendered not truly voluntary.

Defendants' motion concedes that hidden, mandatory surcharges violate consumer protection laws. Therefore, the balance of their motion for judgment on the pleadings argues that their charges are disclosed and/or non-mandatory.[2] The remainder of their motion attempts to

---

[2] Defendants also argue emotively that they are "trying to protect [their] workers" by adding a gratuity to every order. Left unexplained is why, as their employers, Defendants cannot simply

characterize Plaintiffs' Complaint as precluded by *Dimond* or somehow contradictory. These arguments all fail.

The facts of Plaintiffs' Applebee's visits are detailed in Plaintiffs' Complaint (ECF No. 1) and summarized below:

On October 19, 2016, Plaintiff Kendall Ghee purchased food at the 42nd Street Applebee's. *See* Plaintiffs' Complaint, ¶23. Before paying, Ghee was asked to select a tip amount on Defendants' iPad-like tabletop credit card reader. Ghee did not change the default amount of 18% because he was willing to pay an 18% tip. Ghee was not willing to pay any hidden service charge. Ghee was not informed that the money he had intended to leave as a tip was in fact a mandatory hidden service charge of 18%. Ghee reasonably relied on the characterization of his payment as a "tip" when he decided to pay 18% more for his food than the amount listed on the menu. Defendants successfully hid from Ghee the fact that they assess a mandatory surcharge and that Ghee had paid the surcharge rather than a voluntary gratuity.[3]

On November 8, 2016, Ghee again purchased food at the 42nd Street location. *See* Plaintiffs' Complaint, ¶24. At the time he ordered his food, Ghee did not know that Defendants would mandatorily assess 18% of the advertised price of his food to his bill as a mandatory surcharge. Ghee attempted to leave a smaller tip than 18%, but Defendants' payment system would not allow him to pay less than the price of the food plus the 18% service charge. Ghee relied on and was reasonably misled by Defendants' mischaracterization of the price of their

---

pay their workers adequately. As discussed below, the amount that Defendants' employees receive from the mandatory surcharge enables Defendants to pay them less. Defendants are thereby indirectly enriched from their imposition of the hidden surcharge.
[3] Defendants say that it is "inexplicable" that Ghee did not know he would be assessed "the gratuity" during his second visit. Def. Mot. at 3. Ghee did not know that Defendants assess a mandatory surcharge rather than an optional gratuity because Defendant hid that fact.

food in advertisements and on menus. Ghee was not willing to pay any hidden service charge at either of his visits.

On February 19, 2017, Plaintiff Yang Shen purchased food at the 50th Street Applebee's. *See* Plaintiffs' Complaint, ¶25. At the time he ordered his food, Shen did not know that Defendants would assess 15% of the advertised price of his food to his bill as a mandatory surcharge. Before paying, Shen was asked to select a tip amount on Defendants' iPad-like tabletop credit card reader. Shen attempted to change the default amount to below 15% because he was not willing to pay a 15% tip. Shen was not willing to pay any hidden service charge and had not been informed that a service charge would be added to his bill. Shen was unable to close out his bill until he paid the hidden mandatory 15% surcharge. Shen relied on and was reasonably misled by Defendants' mischaracterization of the price of their food in advertisements and on menus.

## **LEGAL STANDARDS**

### A. **Standard of Review for 12(c) Motion for Judgment on the Pleadings**

The standard of review for a 12(c) motion for judgment on the pleadings is the same liberal standard used to review a motion to dismiss pursuant to Rule 12(b)(6). (*See Airgas, Inc. v. Cravath, Swaine & Moore LLP*, No. 10-612, 2010 U.S. Dist. LEXIS 78162, at *6.) This entails accepting as true the allegations in the complaint. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Foreman v. Lowe*, 261 F. App'x 401, 403 n.1 (3d Cir. 2008) (citing *Erickson v. Pardus*, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007)). Any ambiguities giving rise to different possible inferences must be read in favor of the non-moving party. "[W]hen deciding a Rule 12(c) motion for judgment on the pleadings, a district court must view the facts and inferences to be drawn

from the pleadings in the light most favorable to the non-moving party." *Airgas*, No. 10-612, 2010 U.S. Dist. LEXIS 78162, at *6-9 (internal quotations and citations omitted).

### B. <u>Standard of Review for NY GBL §§ 349 and 350</u>

Deception need not rise to the level of common-law fraud to be actionable under New York General Business Law § 349 ("GBL § 349"). *See Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 343, 704 N.Y.S.2d 177, 182, 725 N.E.2d 598, 603 (1999). Under GBL § 349, it is only required that "plaintiffs' claims must be predicated on a deceptive act or practice that is consumer oriented" and "a plaintiff must allege that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344, 704 N.Y.S.2d 177, 182-83, 725 N.E.2d 598, 603-04 (1999) (quotations and citations omitted).

The statute applies "an objective definition of deceptive acts and practices, whether representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 532-33, 647 N.E.2d 741, 744-45 (1995).

A defendant's actions, including omissions, are taken into account, particularly "where the business alone possesses material information that is relevant to the consumer and fails to provide this information." *Id*. Here, only Defendants know that they unilaterally charge a hidden service charge. Informing customers of that fact is entirely Defendants' responsibility.

The same standards apply to Plaintiffs' GBL § 349 and GBL § 350 claims: "[t]he standard for recovery under General Business Law § 350, while specific to false advertising, is

otherwise identical to section 349." *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 n.1, 746 N.Y.S.2d 858, 863, 774 N.E.2d 1190, 1195 (2002).

# LEGAL ARGUMENT

### C. The Mandatory Surcharge Was Not Disclosed

Defendants argue that the mandatory surcharge was disclosed because it appeared on consumers' bills, and on the payment device. However, the surcharge was not disclosed at the time Plaintiffs and the Classes bargained for their food and agreed with Defendants about the price of that food. In other words, Defendants did not disclose the hidden charge **at the time they made the menu pricing misrepresentations** that are the subject of Plaintiffs' Complaint. Defendant's menu prices are false and misleading because at the time consumers bargained for their food, they were unaware of the hidden surcharge. That Defendants were sometimes forced to admit to the surcharge's existence when they billed for it and tried to collect it in no way constitutes "disclosure."

In addition to arguing that they satisfy disclosure requirements because they eventually informed Plaintiffs and Class members of the hidden mandatory surcharge, Defendants also argue that their menus disclosed the relevant information to Plaintiffs and Class members before they ordered. However, there was no true disclosure because Defendants' disclaimer would not put an ordinary reasonable consumer on notice of Defendants' mandatory surcharge. "[T]he standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer" and the "reasonable patron standard should govern when determining whether a banquet patron would understand a service charge was being collected in lieu of a gratuity". *Martin v. Rest. Assocs. Events Corp.*, 2013 NY Slip Op

3304, ¶ 1, 106 A.D.3d 785, 785, 966 N.Y.S.2d 436, 437 (App. Div.) (quoting *Samiento v. World Yacht Inc.*, 2008 NY Slip Op 1258, 10 N.Y.3d 70, 79, 854 N.Y.S.2d 83, 883 N.E.2d 990)).

On the very last page of the menu (and only on that page), on the second to last line, in approximately size 7.5 font, the following text appears: "See inside menu for descriptions of items. No substitutions. Price does not include beverage, dessert, tax or gratuity."[4] Defendants assert that this constitutes disclosure that Defendants charge a mandatory 18% surcharge as a "gratuity." It is entirely implausible that a consumer would read that sentence as implying that a mandatory surcharge would be assessed. Just as that sentence does not inform a reader that a mandatory beverage or dessert would be served, it does not imply that a mandatory "gratuity" will be charged, nor does it indicate what the customary amount of the voluntary gratuity should be.

Courts regularly find that fine-print text presents a disputed issue of law not amenable to resolution on a summary motion such as a motion for judgment on the pleadings. *See e.g. Lazaroff v. Paraco Gas Corp.*, 2011 NY Slip Op 52541(U), ¶ 6, 38 Misc. 3d 1217(A), 1217A, 967 N.Y.S.2d 867, 867 (Sup. Ct.) ("The issue of whether defendants' disclosure of the 15 pound weight declaration was adequately conspicuous to the plaintiff and other consumers is a question of fact."); *Goldman v. Simon Prop. Grp., Inc.*, 2008 NY Slip Op 9353, ¶¶ 3-4, 58 A.D.3d 208, 213, 869 N.Y.S.2d 125, 129-30 (App. Div.) ("The amended complaint alleges, inter alia, that the type size used by Simon is impermissibly small, that Simon failed to clearly and conspicuously disclose the terms of the dormancy fee, and that such conduct, combined with deceptive

---

[4] The font type and size from Defendant's menu pdf (ECF No. 21-2 at 13) are reproduced immediately below. Such font size, relative to the other fonts on the menu, is practically indecipherable.

See inside menu for descriptions of items. No substitutions. Price does not include beverage, dessert, tax or gratuity..

marketing, damaged the plaintiff. The foregoing allegations are sufficient to state a cause of action under General Business Law § 349."); *Sims v. First Consumers Nat'l Bank*, 303 A.D.2d 288, 289, 758 N.Y.S.2d 284, 286 (App. Div. 2003) ("The gist of plaintiffs' deceptive practices claim is that the typeface and location of the fee disclosures, combined with high-pressure advertising, amounted to consumer conduct that was deceptive or misleading in a material way, causing plaintiffs damages for purposes of General Business Law § 349. Whether defendants' conduct was deceptive or misleading is a question of fact.").

Defendants' purported disclaimer is impossibly small, in a singular and isolated part of the menu, and is in any case irrelevant to the issue of **mandatory** charges such as Defendants' mandatory 18% charge. The Court should rule as a matter of law that an ordinary reasonable consumer would not be put on notice from it that Defendants charge an 18% mandatory "gratuity", i.e. a service charge.

### D. <u>The Mandatory Surcharge Was Not Optional</u>

Defendants assert that the mandatory surcharges were optional because customers could supposedly get the charges removed from the bill, but Defendants offer no evidence to support this contention. Instead, Defendants assert that "[t]he Complaint does not dispute that any customer who did not want to pay the gratuity also had a traditional waiter or waitress assigned to them, and only had to ask to have a traditional check brought to them or for assistance in removing the gratuity from the bill." Def. Mot. at 8. The bare possibility that waiters, store managers, or restaurant owners may have the power to override Defendants' payment system was, indeed, not addressed in Plaintiffs' Complaint, because even if true, that would be legally irrelevant. Moreover, this possibility was never noted to Defendants' customers.

In the words of former Applebee's president Mike Archer, the driving force behind Defendants' adaptation of its tabletop payment system: "Who hasn't felt like they've been held hostage waiting for a check to arrive?"[5] Indeed. In introducing Defendants' unique payment system, Archer noted: "Let's face it, everyone who has ever been to a restaurant has been frustrated by waiting for their check."[6] The rationale motivating Defendants' expensive investment in its new payment system was to alleviate Defendants' problem of frustrated diners feeling like hostages waiting for their checks.

In the words of current Applebee's CEO Julia Stewart: "Customers have been telling us for some time—even myself . . . I don't like to wait for the check . . . That was the first sort of pain point we heard of, and we had this unique opportunity with technology to make a real difference."[7] The purpose of the payment system was allegedly to reduce the "pain" of waiting for the check:

> I think what we're much more interested and what we are solving for is consumers told us it was **their No. 1 pain point at an Applebee's** was they didn't like the fact that the food server left with their credit card and they didn't like the fact that **they would often have to wait for the check**. So that goes away with this new technology. The longer-term implications for what it does for the tips, for what it does to the speed of service or what it does to the average check -- too soon to tell.[8]

(Emphasis added).

Defendants have evidently found a way to capitalize on "their number one pain point" of making customers feel like "hostages"—Defendants provide a convenient payment system with

---

[5] http://www.pressreader.com/usa/usa-today-us-edition/20131203/282033324992988 (Last accessed 9/21/17).

[6] http://www.businesswire.com/news/home/20131203005451/en/100000-Applebee%E2%80%99s-Tables-Tech-Treatment-DineEquity-Announces (Last accessed 9/21/17).

[7] https://www.cnbc.com/2013/12/10/ceo-100000-intel-presto-tablets-coming-to-applebees-in-2014.html?view=story&%24DEVICE%24=native-android-tablet (Last accessed 9/21/17).

[8] https://www.fool.com/investing/general/2014/08/16/why-applebees-tablets-may-need-a-reboot.aspx (Last accessed 9/21/17).

a hidden surcharge, but (Defendants assert) they **also** allow consumers to avoid the charge if those consumers are willing to (a) wait and (b) raise the issue with their servers, then (i) wait during the process of reducing the bill amount and the subsequent payment process and (ii) suffer embarrassment and fear retaliation from the waitstaff for not tipping a large amount.

Defendants' customers undergo an even more unpleasant hostage experience than the one described by the Applebee's senior officers, who were describing only the process of waiting for a check, because Defendants force customers who do not wish to pay the hidden surcharge to not only wait for their server, but to actively dispute the hidden surcharge and then wait for a manager with authority to alter their bill. Defendants' hidden mandatory surcharge is essentially a ransom payment, not a "gratuity."

Defendants' "optionality" argument is better phrased as an element of several other legal doctrines, including the "reliance" element of a common law fraud claim or the "voluntary payment" doctrine. Defendants did not explicitly invoke any of these developed bodies of law because they all resoundingly reject Defendants' position in this case.

### 1. Reliance is Not an Element of Plaintiffs' Claims

Defendants essentially argue that Plaintiffs were not justified in relying on their payment system, and instead should have bypassed it to seek the help of a server. This is a "reliance" argument, and it is well established that reliance is not an element of GBL §§ 349 or 350. "[N]either Section 349 nor 350 require proof of reliance." *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 330 (S.D.N.Y. 2015) (quotation marks and citation omitted).

### 2. The Voluntary Payment Doctrine Does Not Bar Plaintiffs' Claims

Combining its "disclosure" and "optional payment" lines of arguments, Defendant says that the charges were "intentionally paid." It is true that consumers were not able to leave the

restaurant without paying the mandatory surcharge, and it is also true that customers "intended" to pay their bills. But a defendant's skill in ultimately obtaining payment for hidden surcharges is not a defense of those hidden charges. Defendant again alludes to an explicit body of caselaw without naming it, this time regarding the "voluntary payment doctrine." The caselaw on the "voluntary payment" doctrine establishes that Plaintiffs' payments were not voluntary.

The voluntary payment doctrine "bars [the] recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 760 N.Y.S.2d 726, 790 N.E.2d 1155 (2003) (citing *Gimbel Bros., Inc. v. Brook Shopping Ctrs., Inc.*, 118 A.D.2d 532, 535, 499 N.Y.S.2d 435, 438 (App. Div. 1986)). It has three relevant exceptions: when Defendants do not fully disclose facts; when there is duress, coercion, or compulsion; and in statutory claims. All three exceptions apply. Furthermore, it is an affirmative defense that Plaintiffs were not required to preemptively rebut, and so it should not serve as the basis for dismissal under an early motion for summary judgment. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009).

Plaintiff Ghee alleges that his payment of the surcharge on his October 19, 2016 visit was due to lack of disclosure. Plaintiffs' Complaint, ¶ 23. Plaintiff Ghee's payment on his November 8, 2016 visit was the result of coercion, as was Plaintiff Shen's payment. Plaintiffs' Complaint, ¶¶ 24-25. These payments are therefore by law not "voluntary."

> Where a plaintiff's claim is predicated on a lack of full disclosure by the defendant, the [voluntary payment] doctrine does not apply. Courts have also held the doctrine inapplicable where a plaintiff's payments were enforced by duress, coercion or compulsion, which has been found where payments were necessary in order to preserve [the plaintiff's] property or protect his business interests.

*United States Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2014 U.S. Dist. LEXIS 72655, at *30-31 (S.D.N.Y. May 23, 2014) (quotations and citations omitted).

In any case, the voluntary payment doctrine cannot bar Plaintiffs' statutory consumer fraud claims. *See MacDonell v. PHH Mortg. Corp.*, 2007 NY Slip Op 8417, ¶ 2, 45 A.D.3d 537, 539, 846 N.Y.S.2d 223, 224 (App. Div.) ("The Supreme Court properly determined that the complaint stated viable causes of action for violation of Real Property Law § 274-a (2) and General Business Law § 349 (a). This Court has determined that the voluntary payment doctrine will not bar such statutory causes of action.").

### 3. Defendant's Optionality Argument Should be Given No Weight in a Motion for Judgment on the Pleadings

No defendant can carry a motion for judgment on the pleadings on the back of its bare contention that determined consumers could have successfully fought an otherwise fraudulent charge. Allowing Defendants to win judgment on the pleadings by merely asserting that its hidden charges *could have* been removed by some wait staff would essentially nullify GBL § 349's protections against hidden fees. Defendants are not permitted to adduce facts to support their contentions in a motion for judgment on the pleadings, so its argument that the charges were optional are frivolous.

### E. <u>Defendant's Conduct Caused Injury to Plaintiffs and Class Members</u>

Even if Plaintiffs were able to reverse the surcharge by having a waiter or manager reverse it, that would not minimize the fact that Defendants committed consumer fraud in the first place. A defendant cannot shield itself from liability by acting lawfully only once it is caught:

> Wilco's conduct constituted a deceptive practice. It offered a fixed-price contract and then refused to comply with its most material term--an agreed-upon price for heating oil. The fact that Wilco reinstated the fixed prices and credited its customers' accounts after complaints were made and an investigation commenced does not mean that Wilco did not act unlawfully.

*People v. Wilco Energy Corp.*, 284 A.D.2d 469, 471, 728 N.Y.S.2d 471, 473 (App. Div. 2001).

Plaintiffs were injured at the time that they were given the bill that failed to conform to the agreed-upon prices. *See Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 211-12, 727 N.Y.S.2d 30, 36, 750 N.E.2d 1078, 1084 (2001) ("plaintiffs suffered no measurable damage until the point in time when those expectations were actually not met, and they were then called upon either to pay additional premiums or lose coverage and forfeit the premiums they previously paid.").

Defendants deprived each and every Plaintiff and Class member of the benefit of their bargain when they imposed a surcharge in addition to the bargained-for menu prices, regardless of whether or not a particular Class member ultimately paid that surcharge, or even if a Class member voluntarily paid more than the surcharge. In *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29 (E.D.N.Y. 2008), consumers bargained to receive a whole year's worth of membership in a membership warehouse club, but actually received less than a full year's membership. Even though many consumers never actually attempted to use their club membership during the wrongfully withheld time, and even though many consumers ultimately had the membership requirement waived such that they were permitted to take advantage of the benefits of membership, all such consumers were denied what they had actually bargained for:

> In other words, the theory of injury and damages relates to the membership fee itself, rather than denial of shopping on a particular day.
>
> . . .
>
> "under plaintiffs' theory of the case, any Costco member who received less than 12 months of membership after a renewal would have a claim that they did not receive the full benefit of their bargain, regardless of whether they attempted to shop in a Costco warehouse."

*Dupler*, 249 F.R.D. 29, 44-47 (E.D.N.Y. 2008).

The instant case is analogous. Even though some Class members might have ultimately paid a large gratuity in addition to the 18% mandatory surcharge, all consumers bargained to pay

no surcharge at all, and all consumers using Defendants' payment system were charged a surcharge and denied the bargain that they had struck. At the time Defendants presented requests for payment to Plaintiffs and the Class, all were equally injured in the full amount of the hidden surcharge. If a Class member later gives money to Defendants intended as a gratuity (as Plaintiff Ghee did during his October 19, 2016 visit), that money is misapplied by Defendants to cover the surcharge, was induced under false pretenses by Defendant, and in any even does nothing to ameliorate the earlier in time injury caused when Defendant forced that Class member to pay the surcharge.

**F. Defendants' Cited Cases are Distinguishable**

Defendants cite several lines of cases in the context of discussing Plaintiffs' injuries, all of which are distinguishable from the instant case.

**1. *Samiento v. World Yacht, Inc.***

Defendant cites *Samiento v. World Yacht Inc.*, 2008 NY Slip Op 1258, 10 N.Y.3d 70, 854 N.Y.S.2d 83, 883 N.E.2d 990 for the proposition that Plaintiffs and Class members were not actually injured by Defendants' deceptive practices.

In *Samiento*, patrons paid before eating on the restaurant boat. *See* complaint in *Samiento v. World Yacht Inc.*, Index No. 05117224 (Sup. Ct. N.Y. Cty. Dec. 12, 2005), ¶¶ 5, 15, 105,124, 126, and 128.[9] Defendant writes that "[i]n *Samiento*, the Court of Appeals found the customers were not harmed by agreeing to pay a service charge and **later** paying the service charge." Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings (ECF No. 20) ("Def. Mot.") at 12 (emphasis added). Defendants' wording could be construed as

---

[9] *Samiento* affirmed the dismissal of the plaintiff's GBL § 349 cause of action for which plaintiff's allegations were taken as true.

implying that patrons in *Samiento* paid the charge after they ate, but that would be false. The order of events was that the *Samiento* patrons agreed to pay a service charge, then **subsequently** paid the service charge, and then **only afterward** ate on the ship restaurant. Those consumers were confronted with the true price of their meal before they ate it, and so they had the opportunity to cancel, seek a refund, downgrade their tickets, and/or resell their tickets, etc. In the instant case, Defendant also advertised prices for food, but these prices were false, as consumers only learned after they had already eaten the food and become liable to pay for it.

*Samiento* is distinguishable from the instant case for an additional reason. In *Samiento v. World Yacht, Inc.,* No. 117224/05, 2006 WL 5111026 (Sup. Ct. N.Y. Cty. Aug. 18, 2006), consumers were told that their pre-payment was "**in lieu of** a voluntary gratuity which they otherwise would have paid to the wait staff." *Samiento,* No. 117224/05, 2006 WL 5111026 (Sup. Ct. N.Y. Cty. Aug. 18, 2006) (emphasis added). In other words, the *Samiento* defendant established that the custom for compensating its service staff would generally be in the form of a mandatory charge.[10] This charge would have to be paid in advance and calculated based on the rest of the bill; i.e., it would be a disclosed mandatory service charge. The *Samiento* consumers were not, in the aggregate, deceived and overcharged because they almost always simply paid the required up-front fee. In contrast, Defendants do not represent their mandatory surcharge as being the flat rate that all customers pay for service. Rather, Defendants hide their service charge except when necessary to collect on it. The payments that Defendant collects in excess of its 18% mandatory surcharge are premised on this deception. Consumers, including Plaintiff Ghee during his first visit to Defendants' restaurants, are deceived into believing that they are paying a

---

[10] A few patrons in *Samiento* did not pay such a sum in advance and are not relevant to the question of whether such sums are misleading. *See Samiento* complaint, ¶ 105.

voluntary gratuity, when in reality they are substantially paying the hidden surcharge that they had not agreed to and would not have agreed to. Unlike in *Samiento*, Defendants' service charge is **not** "in lieu" of a system of encouraging unfettered discretionary gratuities because it is hidden from consumers. Instead, it is **in addition** to a voluntary system. Defendants' customers, in the aggregate are therefore grossly cheated: for consumers who would pay more than 18%, Defendant fosters the illusion that all service charges are discretionary (with high tips being necessary to balance out the inevitable low tips), but for those who seek to pay less than 18%, Defendant reveals that all consumers are charged a set mandatory service charge. As a result, Defendants collect more than 18% in total, far more than they would otherwise collect. Even without considering the distinction between service charges paid by consumers and gratuities paid by consumers, Defendants' practice is clearly to their detriment and therefore implicates the safeguards of GBL § 349.

Most saliently, Defendants collect a full 18% service charge from each patron using their system, all of which is illegitimate, because unlike in *Samiento*, Defendants' customers are charged after they have already eaten.

### 2. *Dimond v. Darden Rests., Inc.*

*Dimond v. Darden Rests., Inc.*, 2014 U.S. Dist. LEXIS 94004 (S.D.N.Y. July 9, 2014) is distinguishable from the instant case (a) factually and (b) because *Dimond* reflects a failed attempt to apply New York consumer fraud law when restaurants' conduct is not deceptive and consumers have the amount of a mandatory surcharge disclosed to them before they order. In *Dimond*, defendants clearly disclosed that "An 18% gratuity will be added to all guest checks." Peculiarly, even as late as his fourth amended complaint, Dimond **did not allege that the restaurant menus contained false prices**, nor did he allege that Defendants' conduct mislead

consumers about food prices. Rather, he alleged that the true menu prices were not reflected in the bills, and that the bills were misleading because they contained an item in violation of local law: a mandatory gratuity. "By violating [6 RCNY] § 5-59, [the *Dimond* defendants] have also violated GBL § 349." Fourth Amended Complaint, *Dimond*, 13-cv-05244-KPF, ECF No. 54, ¶ 28. In other words, without violations of local law, the bills would not be misleading,[11] and in any case the menu food prices were not alleged to be false or misleading because absolutely all facts were disclosed before any food purchase. The deception and injury were the same: the false charge on the false bill. The court dismissed the case, among other reasons, because deception and injury were the same in every respect: a single document's printed dollar amount served as both deception and injury.

---

[11] There is conflicting authority regarding whether a claim with only this defect would be allowed where the illegality of a charge is in the form of a misrepresented legal right or obligation. *See e.g. Lefkowitz v. E.F.G. Baby Products Co., Inc.*, 40 A.D.2d 364 (3d Dep't 1973) (misrepresentation by failing to inform consumers of their legal rights constituted "fraud" for purposes of Executive Law 63(12), which has parallel construction to GBL § 349, *see State by Lefkowitz v. Colo. State Christian Coll. of Church of Inner Power, Inc.*, 76 Misc. 2d 50, 346 N.Y.S.2d 482 (Sup. Ct. 1973)); *Filpo v. Credit Express Furniture*, N.Y.L.J. Aug. 26, 1997 p. 26, col. 4 (Tab B) (failure to inform consumer of statutory rescission rights was deceptive practice) (Yonkers City Ct. 1997); *BNI N.Y. v. DeSanto*, 177 Misc. 2d 9, 15, 675 N.Y.S.2d 752, 755 (City Ct. 1998) (false representation of legal right to a refund actionable under GBL § 349); *Bauer v. Mellon Mortg. Co*., 178 Misc. 2d 234, 239, 680 N.Y.S.2d 397, 400 (Sup. Ct. 1998) ("plaintiffs assert that, by continuing to bill them for PMI, Mellon reasonably led plaintiffs to believe that they were required to continue to maintain such insurance."); *Walts v. First Union Mortg. Corp*., 259 A.D.2d 322, 323, 686 N.Y.S.2d 428, 430 (App. Div. 1999) ("Plaintiffs have adequately alleged a materially deceptive practice aimed at consumers in that Mellon and First Union continued to bill them for PMI premiums, thereby inducing them to believe that they were required to pay them, even after plaintiffs' principal balance dropped below the 75% ratio set forth in Insurance Law § 6503."); *Negrin v. Norwest Mortg., Inc.*, 263 A.D.2d 39, 49, 700 N.Y.S.2d 184, 192 (App. Div. 1999) (improper fees); *People v. Network Assocs.*, 195 Misc. 2d 384, 388, 758 N.Y.S.2d 466, 469 (Sup. Ct. 2003) ("consumers may be deceived into abandoning their right to publish reviews and results of benchmark tests."). In any case, Plaintiffs' Complaint does not depend on any such local laws.

In the instant case, Defendants did not disclose the imposition of their mandatory gratuity, and Plaintiffs squarely allege that the menu prices are false and misleading in that the true price of the food is more than the amount listed on the menus. Customers who ordered from the false menus were deceived, and class members are those consumers who were later forced to pay a hidden fee. Defendants' conduct is misleading regardless of the fact that it violates local laws.

Nor does Plaintiffs' Complaint allege deception as injury. Consumers are deceived by the marketing of Defendants' food, specifically its price, but they are injured in an amount that is only the percentage of the price that Defendant adds as a hidden mandatory surcharge. "The deception is the false and misleading label, and the injury is the purchase price." *Ebin v. Kangadis Food Inc.*, 2013 U.S. Dist. LEXIS 174174, at *12 (S.D.N.Y. Dec. 9, 2013). Defendants' affirmative price misrepresentation, which is the fundamental deception in this case, is entirely separate from Plaintiffs' injury. They are distinct dollar amounts listed on distinct documents.

### G. <u>Unjust Enrichment</u>

A claim for unjust enrichment requires that Defendant wrongfully received a benefit from Plaintiffs and that it would be inequitable for Defendant to retain that benefit. Unjust enrichment claims are not duplicative of Plaintiffs' statutory causes of action because "it is not a prerequisite of an unjust enrichment claim that the one enriched commit a wrongful or unlawful act." *Mayer v. Bishop*, 158 A.D.2d 878, 551 N.Y.S.2d 673, 675 (1990).

It is unquestionably in Defendants' interest for their employees to receive larger tips, as this would allow Defendants to pay their employees less. This dynamic is well-recognized in the law, and in fact motivates the prohibition against allowing serving staff to share tips with non-

tipped employees such as dishwashers. If dishwashers received such tips, restaurants would then benefit by being able to pay their employees less. *See* the Fair Labor Standards Act ("FLSA"), (29 U.S.C. § 203(m))).

Defendants induced consumers such as Plaintiffs and Class members to pay more money that they had bargained for. If Defendants were to somehow evade Plaintiffs' other causes of action due to technicalities such as Defendants' employees having received Class members' money as wages or as "tip credit" under the FLSA, unjust enrichment exists to prevent wrongdoers such as Defendants from retaining such benefits.

### H. **Plaintiffs Desire to Clarify their Complaint and Will Seek to Amend**

Several times in their brief, Defendants cite infelicitous language in paragraph 134 of Plaintiffs' Complaint, which is in a subsection about alternative relief (page 34 of 36).[12] Defendants seize on the language in this section and misinterpret the text so as to render Plaintiffs' Complaint "inconsistent", "contradictory", "inexplicable", etc. Admittedly, this paragraph does contain an accidental omission that renders it less than perfectly clear and thus lends itself to this exploitation. Specifically, a sentence about Plaintiff Ghee uses the isolated word "Plaintiff" when it should have employed the more precise "Plaintiff GHEE."

By contrast, Defendant interprets "Plaintiff" as "Plaintiff**s**", meaning "Plaintiffs Ghee **and Shen.**" This is most implausible, however, given that all the surrounding sentences refer to

---

[12] *See, e.g.*, Def. Mot. at 1 ("Inconsistently, Plaintiffs claim that such assessments were 'hidden' and 'mandatory' surcharges even though they **both** intended the payments to constitute a gratuity.") (emphasis added); Def. Mot at 4 ("Inconsistently, **Shen** alleges that he intentionally paid the monies as a tip. (Cmpl. ¶ 134).") (emphasis added); Def. Mot. at 4 ("**Plaintiffs** allege that they paid the amounts believing they were tips. (Cmpl. ¶ 134). Despite these admissions, the Complaint inconsistently asserts a claim that Defendants were unjustly enriched by gratuity payments to the waiters and waitresses.") (emphasis added); Def. Mot. at 12 ("The rationale set forth by the Court of Appeals in Samiento applies here. **Plaintiffs** specifically allege that they intended the monies to be paid as a gratuity. (Cmpl. ¶ 134)") (emphasis added).

the Plaintiffs collectively as "Plaintiffs GHEE and SHEN." Thus, the broader context of this paragraph makes its actual meaning perfectly clear, showing that the sentence in question does not bear Defendants' interpretation, which is unpersuasive notwithstanding the accidental omission, especially given that the paragraph refers to "Plaintiff" in the singular.

Ideally, paragraph 134 should have read:

Plaintiffs GHEE and SHEN and members of the Classes reasonably relied on Defendants' representation of the surcharge as a "tip" and so had not realized they would be charged a surcharge until the tabletop payment machine failed to allow them to lower the amount of the surcharge. This realization happened to Plaintiff GHEE on his November 8, 2016 visit (his second of two visits). This realization happened to Plaintiff SHEN on his February 19, 2017 visit (his only visit). In reasonable reliance on Defendants' representation, members of the Classes who paid the amount of the surcharge without attempting to reduce it below the minimum (including Plaintiff GHEE on his October 19, 2016 visit, the first of two visits, and also including Class members who increased the amount paid to an amount greater than the minimum level) paid that amount believing that it was all a voluntary tip. Members of the Classes who paid the amount of the surcharge after attempting to reduce it below the payment device's minimum surcharge amount (including Plaintiff GHEE on his November 8, 2016 visit and Plaintiff SHEN) paid that amount because they were compelled to pay.

Notwithstanding that Plaintiffs should have been clearer, these allegations are all present throughout Plaintiffs' Complaint, including in the "Parties" and "Factual Allegations" sections. *See e.g.* Plaintiffs' Complaint, ¶¶ 12, 23-25. Thus, the totality of the Complaint gives Defendant fair notice of all of Plaintiffs' claims. Because the pleading would otherwise survive this motion, Plaintiffs intend to ask the Court for leave to amend, in order to better clarify the facts of Plaintiff Ghee's experience.

# <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs respectfully submit that Defendant's Motion for Judgment on the Pleadings should be denied.

Dated: September 21, 2017

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*


By: ___/s/ C.K. Lee_____
        C.K. Lee