**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KENDALL GHEE and YANG SHEN, *on behalf of themselves and all others similarly situated*,<br><br>                             Plaintiffs,<br><br>              v.<br><br>APPLE-METRO, INC., a New York corporation; 42nd APPLE, LLC d/b/a/ APPLEBEE'S NEIGHBORHOOD GRILL & BAR, a New York corporation; and BROADWAY APPLE, LLC d/b/a/ APPLEBEE'S NEIGHBORHOOD GRILL & BAR, a New York corporation,<br><br>                          Defendants. | Case No.: 17-cv-05723-JPO |

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

---

**OLSHAN FROME WOLOSKY LLP**
*Attorneys for Defendants*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

# **TABLE OF CONTENTS**

Page

GENERAL STATEMENT IN REPLY ........................................................................................1

    A.    DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE GBL
           CLAIMS ................................................................................................................3

    B.    PLAINTIFFS' NEW INJURY THEORY IS ALSO INSUFFICIENT...................6

    C.    PLAINTIFF'S RELIANCE ARGUMENT IS IRRELEVANT..............................8

    D.    THE REMAINING CLAIMS SHOULD BE DISMISSED ...................................9

    E.    THERE IS NO REASON TO PERMIT PLAINTIFFS TO AMEND ...................10

CONCLUSION......................................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937 (2009)........................................................................8

*Bildstein v. MasterCard Intern., Inc.*,
  329 F.Supp.2d 410 (S.D.N.Y. 2004)........................................................................6

*Boyd v. J.E. Robert Co.*,
  No. 05-CV-2455, 2012 WL 4718823 (E.D.N.Y. Aug. 27, 2012),
  *aff'd,* 765 F.3d 123 (2d Cir. 2014).........................................................................4

*Chemy v. Emigrant Bank*,
  604 F.Supp.2d 605 (S.D.N.Y. 2009).........................................................................7

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
  292 A.D.2d 25, 740 N.Y.S.2d 396 (2d Dep't 2002) ................................................7

*Dimond v. Darden Restaurants., Inc.*,
  No. 13 Civ. 5244 (KPF), 2014 WL 3377105 (S.D.N.Y. July 9, 2014) ....................1

*Goldberg v. Manhattan Ford Lincoln Mercury*,
  129 Misc.2d 123, 492 N.Y.S.2d 318 (Sup.Ct. N.Y. Co. 1985) ...........................6, 7

*Martin v. Restaurant Associates Events Corp.*,
  106 A.D.3d 785, 966 N.Y.S.2d 436 (2d Dep't 2013) ..............................................4

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) .................................................................3

*People v. Wilco Energy Corp.*,
  284 A.D.2d 469, 728 N.Y.S.2d 471 (2d Dep't 2001) ..............................................8

*Polzer v. TRW. Inc.*,
  256 A.D.2d 248. 682 N.Y.S.2d 194 (1st Dep't 1998) ..............................................7

*Small v. Lorillard Tobacco Co.*,
  94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) .................................................................6

*Smith v. Chase Manhattan Bank USA N.A.*,
  293 A.D.2d 598, 741 N.Y.S.2d 100 (2d Dep't 2002)...............................................7

*Sokoloff v. Town Sports Int'l, Inc.*,
  6 A.D.3d 185, 778 N.Y.S.2d 9 (1st Dep't 2004) .....................................................6

*Stutman v. Chemical Bank*,
  95 N.Y.2d 24, 709 N.Y.S.2d 892 (2000) ..............................................................5, 9

*Varela v. Investors Ins. Holding Corp.*,
  81 N.Y.2d 958, 598 N.Y.S.2d 761 (1993) ...........................................................4, 5

*Westfall v. Chase Lincoln First Bank, N.A.*,
  258 A.D.2d 299, 685 N.Y.S.2d 181 (1st Dept. 1999)..............................................7

**STATUTES**

New York General Business Law ("GBL") § 349............................................... *passim*

GBL § 350...................................................................................................................8

**OTHER AUTHORITIES**

Rule 12(c) of the Federal Rules of Civil Procedure.......................................................1

Defendants Apple-Metro, Inc., 42nd Apple, LLC and Broadway Apple, LLC (collectively "Defendants"), by and through the undersigned attorneys, hereby submit this Reply Memorandum of Law in further support of their motion, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings and dismissal of the Complaint filed in this action by Kendall Ghee and Yang Shen (collectively "Plaintiffs").

## GENERAL STATEMENT IN REPLY

In their opposition memorandum ("Opp. Mem."), Plaintiffs argue for the first time that their claim is predicated on the inconvenience of waiting for a waiter to ring their check. Through colorful language, Plaintiffs ask the Court to equate the traditional method of paying a restaurant bill (having the check brought by the waiter) to being held "hostage." This is Plaintiffs' tacit admission of the truth, namely that Defendants' had no "hidden mandatory surcharge" because: (a) it was always clear food process and gratuities were separate; and (b) anyone not wishing to leave a tip either requested or could have requested a traditional check rather than the optional electronic "TED" tablet.

Importantly, a sister court in this district already rejected the inconvenience argument as a non-viable basis for a claim under New York's General Business Law ("GBL") in the very context of restaurant gratuities:

> That social norms may make a person feel uncomfortable in such a situation does not result in a GBL § 349 violation. Moreover, in New York City, gratuities of between 18% and 20% are not uncommon practice, thereby undercutting Plaintiff's argument that patrons were deceptively tricked into paying a gratuity that they would not otherwise have paid.

*Dimond v. Darden Restaurants., Inc*., No. 13 Civ. 5244 (KPF), 2014 WL 3377105, at *8 (S.D.N.Y. July 9, 2014).

In an effort to distract from the infirmities of their Complaint, Plaintiffs' opposition resorts to James Bond-like imagery-- "rushing to catch a plane," "escape," "hostage experiences" and

"ransom." But when Plaintiffs' hyperbole and sophistry are stripped away, there is neither a valid claim nor a factual dispute remaining to save the Complaint from dismissal. Plaintiffs admit, and/or documentary evidence shows: they clearly understood the concept that tipping waiters is distinct from food prices paid to the restaurant; they received a menu advising that food prices did not include tips; and the TEDs clearly identified the difference between food prices and tip. This is a crucial point: Plaintiffs allege *ad infinitum* that charges were "hidden" or "concealed" but now concede in their opposition that Defendants' menus disclosed that tips were separate from food prices. *See* Opp. Mem. at 7 ("Price does not include beverage, dessert, tax or gratuity"). Plaintiff's own Exhibits H, I and J to their Complaint further demonstrate that so-called "hidden" charges were not hidden at all-- they were identified as tips, not disguised as higher food prices.

Plaintiffs also admit (albeit grudgingly) that nothing prevented them from leaving a smaller tip-- or no tip at all— and this could have been accomplished simply by asking for the check, the same custom employed at virtually every restaurant in the world. Thus, there is also no valid "mandatory" component to Plaintiffs' Complaint.

We also know from the pleaded conduct that neither of the Plaintiffs was deceived, which is a required element of all GBL claims. On his first trip to Applebee's, Ghee "was satisfied with the food and service" and desired to leave an 18% tip. He left exactly that amount down to the nearest penny. Complaint at ¶23 and Exh. E ($3.13 tip on a $17.38 bill). Also, Exh. I and paragraph 25 show that Shen knew exactly what he was paying when leaving a tip.

Realizing the devastating impact of their admissions, Plaintiffs now argue that Ghee was duped into leaving a tip. *Compare* Complaint at ¶23 (Ghee satisfied and willing to leave an 18% tip) *with* Opp. Mem. at 11 (Ghee now says he left tip "due to lack of disclosure"). Plaintiffs' new tact strains credulity and must be rejected. **Had Ghee been deceived or any charge been**

**"hidden"**, **he would have been fooled into leaving a 36% (double) tip**. The inescapable conclusion is that by leaving the 18% tip as per his intentions, Ghee was not deceived in any manner. Even more telling is that before paying for their meals, Ghee and Shen both separately photographed the TED device's prompt to "Select your Tip", with the word "Tip" capitalized and printed separately-- in large font-- from the price of food. (Complaint, Exhs. H, I and J). They both knew exactly what they were doing and, far from being deceived, they elected to proceed with payment, likely with this lawsuit in mind.

Plaintiffs' argument against dismissal now boils down to the claimed inconvenience or uncomfortability of leaving a lesser tip or no tip. But inconvenience and/or uncomfortability does not create a cause of action under New York's General Business Law. Plaintiffs were not deceived into any payments and their Complaint is built on the false premise of "hidden mandatory" when nothing at all was hidden or forced on them.

A.    **DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE GBL CLAIMS**

Defendants' opening papers (pages 7-11) explained why Plaintiffs fail to state an actionable claim under New York's General Business Law ("GBL").[1] As Defendants have explained (and reiterated, above), there was no "mandatory surcharge" because tipping was never mandatory, but even if the Court finds otherwise, dismissal of the two GBL claims is still appropriate because it is clear that there was no deception involved. Indeed, Plaintiffs begin their Complaint by admitting they (and the putative class members) are and were accustomed to leaving a gratuity and typically do so. Complaint at ¶2.

---

[1] Courts have recognized that a court may determine whether an act or omission is misleading as a matter of law. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.S.2d 20, 26, 623 N.Y.S.2d 529 (1995) (cited by Plaintiffs, Opp. Mem. at 5).

Plaintiffs also concede there is a "reasonable consumer" standard under the GBL (Opp. Mem. at 5) and allege in paragraph 2-4 of the Complaint their understanding that tipping is voluntary practice. They further admit Defendants' menus state that "Price does not include beverage, dessert, tax or gratuity." Opp. Mem. at 7. Given Plaintiffs' three photographs of the TED tablet showing the word "Tip" in large print, Plaintiffs' claim they were deceived by a tip prompt into paying higher-than-advertised food prices does not pass the reasonableness test.[2]

Under New York law, the touchstone under GBL § 349 is deception. When there is no deception, there is no cause of action. For example, in *Boyd v. J.E. Robert Co.,* No. 05-CV-2455, 2012 WL 4718823 (E.D.N.Y. Aug. 27, 2012), *aff'd,* 765 F.3d 123 (2d Cir. 2014), the defendants were sued under GBL § 349 for charging legal fees that were unauthorized under the original attorney retainer agreements and which were subsequently "only summarily identified the amounts as 'legal fees and costs (estimated),' without any itemization." 2012 WL 4718823 at *14. This is similar to Plaintiffs' current (but debunked) claim that the tips were not disclosed on the menu and improperly disclosed on the TEDs. But the district court in *Boyd* ruled that a GBL § 349 claim was not stated because "no reasonable trier of fact could find that Defendants engaged in practices or acts that were deceptive or materially misleading, as Defendants disclosed the amount due for legal fees and costs, and identified the same as only an estimate[.]"

_____

[2] Plaintiffs' citation to *Martin v. Restaurant Associates Events Corp.,* 106 A.D.3d 785, 966 N.Y.S.2d 436 (2d Dep't 2013) (Opp. Mem. at 6-7) is out of context. That decision pertained to whether, after collecting tips from consumers, an employer then had to pay the tip money over to the employees instead of retaining it. *See* 106 A.D.3d at 786 ("customers reasonably believed that the service charge was a gratuity, the defendants' policies misled customers into believing the service charge was a gratuity, and the catering order forms and menus failed to notify customers that the service charge was not a gratuity"). Here, there is no allegation that Defendants withheld the gratuities from their employees. In fact, the moving papers specifically denied any such practice.

*Id.* at *15.  The absence of a description of the fees in the initial retainer agreement did not trigger a GBL § 349 violation.  Here too, everything was disclosed to Ghee and Shen.

Similarly, in *Varela v. Investors Ins. Holding Corp.*, 81 N.Y.2d 958, 598 N.Y.S.2d 761 (1993), the Court of Appeals ruled that a GBL § 349 claim was <u>not</u> stated against lawyer who insisted on receiving a $60 fee for filing satisfactions of judgment even though his co-defendant admittedly caused the situation by entering a default judgment erroneously.  In affirming dismissal of the GBL claim, the Court of Appeals noted that '[w]hether or not defendant's actions were proper, manifestly they did not mislead plaintiffs in any material way and did not constitute 'deceptive acts' within the meaning of the statute."  81 N.Y.2d at 961.

Another relevant case (which also addressed the irrelevant reliance issue raised by Plaintiffs), *Stutman v. Chemical Bank,* 95 N.Y.2d 24, 709 N.Y.S.2d 892 (2000), affirmed the dismissal of a claim under GBL § 349.  The underlying facts were similar to this dispute.  The defendant bank assessed a $275 "attorney's fee" in connection with the refinancing of a mortgage loan.  The plaintiff alleged the fee was deceptive because it violated a provision in the mortgage note which stated that the bank would not levy any "prepayment charges."  New York's Court of Appeals ruled that, as a matter of law, the plaintiff failed to show any GBL violation because the fee was *not* a prepayment charge and therefore was not deceptive under Section 349. 95 N.Y.2d at 31, 709 N.Y.S.2d at 897.  In essence, the court concluded that because the bank did not mislead the plaintiffs into believing that the charge was something other than what it was, and did not misrepresent the nature of the charge, the complaint failed to state a claim under GBL § 349.  The same is true here: the gratuity is not a disguised charge for food, and Plaintiffs were told (and independently knew) that food prices did not include gratuity.  The exhibits to the Complaint prove that the non-mandatory charge was clearly identified as a

gratuity, not hidden as a deceptive charge for food.  No deception is involved in either scenario, this one or *Stutman.*

**B.    PLAINTIFFS' NEW INJURY THEORY IS ALSO INSUFFICIENT**

Plaintiffs have failed to allege an injury capable of supporting any claim with a damages element to it.  In their opposition, Plaintiffs could not articulate any form of financial damages, and even admitted that absent the challenged practices, "Class members might have ultimately paid a large gratuity in addition to the 18% mandatory surcharge [...]".  Opp. Mem. at 13.

Plaintiffs do not claim any financial loss that satisfies GBL § 349's injury requirement, which requires that a monetary loss be <u>independent</u> of the loss caused by the alleged breach of contract.  For example, in *Bildstein v. MasterCard Intern., Inc.,* 329 F.Supp.2d 410 (S.D.N.Y. 2004), MasterCard charged an undisclosed foreign currency transaction fee.  *Id.* at 412.  The Plaintiff alleged his injury was the payment of the deceptive fee.  *Id.* at 415.  This was insufficient for purposes of GBL § 349: "It is well established, however, that the claimed deception cannot itself be the only injury."  *Id.* at 416.  *See also, Small v. Lorillard Tobacco Co.,* 94 N.Y.2d 43, 56, 698 N.Y.S.2d 615, 621 (1999) (Court of Appeals rules injury must be separate and distinct from the deceptive act); *Sokoloff v. Town Sports Int'l, Inc.,* 6 A.D.3d 185, 186, 778 N.Y.S.2d 9, 10 (1st Dep't 2004) (affirming dismissal of plaintiff's suit against her health club for deception because she did not claim a monetary loss other than payment of her membership fees).

In an effort to rescue their Complaint, Plaintiffs pivot on page 9 to a new injury theory: the inconvenience of being "held hostage."[3]  This argument ignores the Court's *Dimond* decision, *supra*, which holds that inconvenience is not actionable under the GBL.

---

[3] Plaintiffs' opening analogy is replete with irrelevant hypotheticals such as "you call to complain but nobody answers you" and "possibly missing a plane or taking a taxi".  There are no comparable facts either plead in the Complaint or otherwise present in this dispute.

The *Dimond* decision is no outlier, as several others also hold that annoyance and inconvenience to consumers do not constitute actionable injury. *Goldberg v. Manhattan Ford Lincoln Mercury,* 129 Misc.2d 123, 492 N.Y.S.2d 318 (Sup.Ct. N.Y. Co. 1985) held as follows:

> If the waiting time endured is now to constitute a basis for the recovery of damages, receptionists, doctors, lawyers and others who keep the reception rooms stacked up had better beware! In the opinion of this court, the waste of time and erosion of patience by one party to a negotiation does not yet constitute a tort, nor is it a 'deceptive practice' [...] frustration and disappointed expectations do not of themselves give rise to a cognizable cause of action."

129 Misc.2d at 126-27, 129. *See also, Chemy v. Emigrant Bank,* 604 F.Supp.2d 605, 609 (S.D.N.Y. 2009) (receipt of spam e-mails was not sufficient injury to state a claim for relief under GBL § 349); *Smith v. Chase Manhattan Bank USA N.A.,* 293 A.D.2d 598, 741 N.Y.S.2d 100 (2d Dep't 2002) (unauthorized sale of consumer's private information, subjecting consumers to deluge of telemarketing calls and junk mail held not to constitute injury); *Polzer v. TRW. Inc.,* 256 A.D.2d 248. 682 N.Y.S.2d 194, 195 (1st Dep't 1998) (GBL § 349 claim dismissed with court stating "[a]n action does not compensate for 'frustration'") (citing *Goldberg, supra*).

While Defendants did not explicitly invoke the voluntary payment doctrine because the authorities are divided on its application to a GBL § 349 claim, there are ample similarities between this dispute and others where dismissal was granted on that basis. *E.g., Westfall v. Chase Lincoln First Bank, N.A.,* 258 A.D.2d 299, 300, 685 N.Y.S.2d 181, 182 (1st Dep't 1999) ("all of plaintiffs' causes of action are barred by the voluntary payment doctrine, inasmuch as plaintiffs paid the subject charges without protest or even inquiry, and were not laboring under any material mistake of fact when they did so"); *Dillon v. U-A Columbia Cablevision of Westchester, Inc.,* 292 A.D.2d 25, 27, 740 N.Y.S.2d 396, 397 (2d Dep't 2002) ("Having full knowledge of the late fee and the circumstances under which it would be imposed, the plaintiff cannot rely on her misconception of the actual costs associated with late payments to defeat

application of the voluntary payment doctrine"). Plaintiffs could have asked for a non-electronic check. Instead, they voluntarily chose to pay through the TED, and the photographic exhibits to the Complaint prevent either from arguing they paid under a mistake of fact. They knew they were leaving a tip because the TED clearly told them so.

Finally on this point, since there is no allegation that paying by TED was the only way to close out a bill, Plaintiffs fall short of the *Iqbal / Twombly* standard[4] because they have pleaded facts that are "merely consistent with" liability. Dismissal of the Complaint is therefore required because Plaintiffs "stop short of the line between possibility and plausibility of entitlement to relief." *See Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citation omitted). Plaintiffs' reference to *People v. Wilco Energy Corp.,* 284 A.D.2d 469, 728 N.Y.S.2d 471 (2d Dep't 2001) does nothing to rescue their claims. In *Wilco,* the defendant refused to remove the disputed charges until after a governmental investigation was commenced. 284 A.D.2d at 471. In this case, Plaintiffs concede they could have asked their waiter for a traditional check but failed to do so because, they say, asking for a check is akin to being held hostage. The two scenarios are very different, and nothing in *Wilco* leads to the conclusion that an alleged inconvenience equals a legal violation.

Again, there is no allegation anywhere that it was mandatory for Ghee or Shen to pay via TED. In any event, having to wait a couple of extra minutes for a check does not satisfy either the deception or damages elements of Plaintiffs' claims.

## C. **PLAINTIFF'S RELIANCE ARGUMENT IS IRRELEVANT**

Having been confronted with a fatal flaw in their legal theory, Plaintiffs create a straw man argument about reliance, misleadingly railing against an argument Defendants never made.

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570, 127 S.Ct. 1955 (2007).

*See* Opp. Mem. at 10 ("Defendants essentially argue that Plaintiffs were not justified in relying on their payment system […] and it is well-established that reliance is not an element of GBL §§ 349 or 350"). First, that is an incorrect statement of law, as reliance is required under GBL § 350. More importantly, however, Defendants never raised the issue of reliance.

Plaintiffs' tactic of raising and then arguing this dubious issue does not save the Complaint. This is demonstrated in *Stutman, supra,* where the appellate court erroneously dismissed the case based on the plaintiff's lack of reliance. On further appeal, New York's highest court noted reliance is not an element of a GBL § 349 claim, but nonetheless dismissed the complaint concerning an allegedly hidden "attorney's fee" in a mortgage transaction. Just as Ghee and Shen argue here that the tip was a means of charging higher food prices, the Stutmans argued the attorney's fee was a ruse to charge an additional $275 for mortgage prepayment. 95 N.Y.2d at 29 The Court of Appeals rejected that argument and dismissed the case because the plaintiffs failed to properly allege a deceptive act and in fact, there was no deception. *Id* at 31.[5]

## D.    THE REMAINING CLAIMS SHOULD BE DISMISSED

Although Plaintiffs hint that Defendants are retaining tip payments, they offered no real argument regarding the infirmities of their unjust enrichment claim. The Complaint did not allege, nor did Plaintiffs' opposition papers challenge the fact that Defendants were not unjustly

---

[5] Another change in Plaintiffs' theories concerns the menus' disclosure that food prices did not include gratuity charges. Originally, Plaintiffs alleged gratuities were a "surcharge [that] is hidden from consumers until after they have already eaten and are paying their bill at the [TED] terminals." Complaint at ¶4. Faced with proof from their own exhibit that the menus state otherwise, Plaintiffs acknowledge the disclosure and instead complain that it was made in small font size. Opp. Mem. at 7. This argument should not be credited because: 1) it was not alleged in the Complaint; and 2) it is futile because, as Plaintiffs admit, even if no disclosures at all were present, American consumers understand that tips are extra payments made to servers that are distinct from the price of food. Complaint at ¶¶ 2-4 and Exh. A. Certainly, no disclosure about tips was necessary to satisfy the GBL's reasonable consumer standard, because tipping as a distinct expense is widely understood.

enriched because the tip money went to the employees. Furthermore, Plaintiffs failed to provide a valid argument in response to Defendants' well-supported position that the separation of food prices and gratuities were fully and properly disclosed.

## E.    THERE IS NO REASON TO PERMIT PLAINTIFFS TO AMEND

Hedging their bets, Plaintiffs admit to "infelicitous" language in their Complaint, and ask for leave to amend. There is no need for the Court to grant this request because there is no dispute as to the following facts: (a) Plaintiffs understood the concept that gratuities are distinct from food prices; (b) Plaintiffs were shown a menu with prices and a statement that tips were not included in those prices; (c) Plaintiffs used a TED tablet that clearly separated food prices from gratuity, thus precluding any cognizable claim of deception; and (d) Plaintiffs could have paid by traditional check and left any tip or no tip at all (but they claim that to have done so would amount to being held hostage). None of these immutable facts will change in an amended pleading, and therefore allowing an amended complaint would be futile.[6] The rewritten paragraph 134 (Opp. Mem. at 20) changes nothing. Plaintiffs insert the word "compelled" to pay but besides that word, they make no allegations of compulsion. The other new allegations regarding Ghee's two visits remain incredible for reasons set forth above.

**CONCLUSION**

For all the foregoing reasons expressed in this reply submission, as well as Defendants' moving papers, the Complaint should be dismissed in its entirety and the Court should grant judgment on the pleadings to Defendants, as well as such additional relief as seems just to the Court.

---

[6] Plaintiffs' allegations about Ghee's individual experiences (he wanted to and did leave an 18% tip on his first visit) show the speculative and highly variable nature of determining what type of tip any putative class member might have left if not "held hostage." For this and other reasons, class certification will never be appropriate in this action.

Dated: New York, New York
       October 5, 2017

**OLSHAN FROME & WOLOSKY LLP**


By:    */s/ Andrew B. Lustigman*
       Andrew B. Lustigman
       Scott Shaffer
       1325 Avenue of the Americas
       New York, New York 10019
       Tel: (212) 451-2300
       E-mail: alustigman@olshanlaw.com;
              sshaffer@olshanlaw.com

       *Attorneys for Defendants*