UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
KENDALL GHEE and YANG SHEN, *on behalf of themselves and all others similarly situated*,

                     Plaintiffs,

    -v-

APPLE-METRO, INC., 42ND APPLE LLC, and BROADWAY APPLE, LLC,

                     Defendants.
———————————————————————

17-CV-5723 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    This is a putative class action on behalf of patrons of two Applebee's restaurants in midtown Manhattan. Plaintiffs allege that the restaurants force their customers to pay a "tip" of at least fifteen or eighteen percent—without disclosing such a charge in advance. Plaintiffs claim that this violates New York law. Defendants move for judgment on the pleadings. For the reasons that follow, the motion is denied.

**I.    Background**

    A diner in a typical American restaurant orders from a server and gets a paper bill at the end of the meal. If she pays with a credit card, she then gets a receipt. If she wishes to leave a tip, she writes the amount of the tip on the receipt. Assuming that the diner is not a scrooge and the service was not atrocious, a typical New Yorker tips between fifteen and twenty-five percent.

    In contrast, a diner at the Broadway or Times Square Applebee's, as alleged in the Complaint, orders through a table-top computer tablet. At the end of her meal, she pays through that tablet. During the payment process, the tablet prompts her: "Select your Tip." (Compl. Ex. I.) But the tablet does not give her the option of *not* leaving a tip. At the Times Square Applebee's, the tablet requires that the customer leave at least an eighteen percent tip. At the

1

Broadway Applebee's, the tablet requires that the customer leave at least a fifteen percent tip. (Compl. ¶¶ 1, 4.) If the customer tries to enter a number less than the minimum, a message appears on the screen: "Amount entered is under the minimum service charge of 15% [or 18%], please enter a higher amount." (Compl. Exs. H, I.)

Plaintiffs are two individuals who ate at the two Applebee's restaurants in question. (Compl. ¶¶ 23–25.) There are three defendants: Apple-Metro, Inc., which owns 35 Applebee's franchises in the New York City area; and 42nd St. Apple, LLC and Broadway Apple, LLC, which operate the two Applebee's restaurants at issue in this case. (Compl. ¶¶ 26–30.)

The crux of the Complaint is that the two offending Applebee's restaurants deceive their customers and force them into tipping their servers. The Complaint alleges that the menu prices are misleading because they do not disclose that customers must pay a mandatory tip. Along the same lines, the Complaint alleges that it is misleading to call the end-of-meal charge a "tip" because it is really a mandatory surcharge. Plaintiffs seek to represent a class of consumers who dined at the two Applebee's restaurants. They assert claims under New York law, including unfair business practices, false advertising, breach of contract, negligent misrepresentation, and unjust enrichment.

This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the Complaint alleges that at least one plaintiff is diverse from at least one defendant, and alleges that the amount in controversy exceeds five million dollars. (Compl. ¶ 17.)

Defendants answered the Complaint and now move for judgment on the pleadings.

**II.     Legal Standard**

A party is entitled to judgment on the pleadings if it establishes that no issue of material fact remains unresolved and that it is entitled to judgment as a matter of law. *See Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990). "'The standard for granting a Rule 12(c)

motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim,' and, as in a 12(b)(6) motion, the Court takes the facts alleged in the complaint as true." *Zurich Ins. Co. v. Crowley Latin Am. Servs., LLC*, No. 16 Civ. 1861, 2016 WL 7377047, at *2 (S.D.N.Y. Dec. 20, 2016) (quoting *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)).

**III.    Discussion**

Defendants argue that the Complaint should be dismissed because (1) the tipping structure was adequately disclosed on the menu, (2) the tips were not really mandatory, (3) tipping is an accepted social norm, (4) Plaintiffs did not properly allege that they were injured, and (5) there was no unjust enrichment because the tips went to the waitstaff, not to Applebee's. Each argument is discussed in turn.

**A.    Was the Tipping Structure Adequately Disclosed?**

Defendants' first argument is that the tipping structure was adequately disclosed on the menus, which noted that prices "do[] not include beverages, dessert, taxes or gratuity." (Dkt. No. 20 at 2; Dkt. No. 21-2 at 13.) According to Defendants, an adequate disclosure at the point of sale negates all of Plaintiffs' claims. As support, Defendants point to *Dimond v. Darden Restaurants, Inc.*, No. 13 Civ. 5244, 2014 WL 3377105 (S.D.N.Y. July 9, 2014), which dismissed a complaint alleging that Olive Garden and Red Lobster restaurants unlawfully added an automatic eighteen percent tip to their bills.

This argument fails. While adequate disclosure might indeed defeat Plaintiffs' claims, the Complaint plausibly alleges that the disclosure was inadequate. In *Dimond*, the menus conspicuously said that "[a]n 18% gratuity will be added to all guest checks." *Id.* at *1. In contrast, the Applebee's menu simply says that prices "do[] not include beverages, dessert, taxes or gratuity." (Dkt. No. 20 at 2; Dkt. No. 21-2 at 13.) It is one thing to disclose that prices do not

include tips.  It is quite another thing to disclose that prices do not include tips *and that there will be a mandatory tip when the check arrives*.  The menus at issue in *Dimond* included the latter disclosure; here there is only the former.  Indeed, using Defendants' logic, Applebee's could serve each customer a mandatory ice cream sundae based on its disclosure that the meal price does not include dessert.

Accordingly, the Complaint adequately alleges that the restaurant did not fully disclose its tipping structure.

### B.   Was Tipping Mandatory?

Defendants' second argument is that tipping was not mandatory.  Even though customers had to tip in order to pay via the table-top tablet, Defendants argue that customers could have called their server over and asked for a paper bill without the mandatory tip.

This argument is premature.  On a motion for judgment on the pleadings, the Court considers only the pleadings, the attachments to the pleadings, and things of which the Court can take judicial notice.  *See Admiral Ins. Co. v. Adges*, No. 11 Civ. 8289, 2012 WL 2426541, at *1 (S.D.N.Y. June 27, 2012).  Defendants' argument is based on facts not in the Complaint, and there are likely disputed factual issues—for example, as to whether customers knew that this option was available to them.  Thus, Defendants' second argument is more appropriate at the summary judgment stage.

### C.   Does the Social Norm of Tipping Negate Plaintiffs' Claims?

Defendants' third argument is that customers expect the bill to include a tip because tipping is a well-accepted social norm.  And because customers expect to leave a tip, Defendants argue, Applebee's did not breach any contract or deceive any of its customers.

This argument also fails.  It is true that diners often consider the tip to be a *de facto* part of the price.  This being New York City, fifteen percent may indeed be a threshold beneath

4

which no self-respecting diner would dip. Nevertheless, the social norm is that tips are expected but subject to the customer's discretion. At least that is what the Complaint alleges. (Compl. ¶¶ 41–43.) In other words, consumers expect to pay a tip, but they also expect to have the right to leave a lower tip for poor service. Forcing customers to leave a fifteen- or eighteen-percent tip defeats those consumer expectations.

Moreover, Defendants' social-norms argument is undermined by their professed reason for the mandatory tip structure: that the two restaurants are frequented by tourists unaccustomed to tipping. (*See* Dkt. No. 20 at 1.) In many parts of the world, particularly where restaurant workers earn a living wage independent of their tips, ten percent is a generous tip.[1] In some countries, tipping is even considered rude.[2] The Court does not doubt Defendants' contention that all tips go to the waitstaff and not to the restaurants. Indeed, Defendants' intentions may be noble—to make sure that their hardworking servers are not stiffed by uninformed tourists. Nevertheless, not all of Defendants' customers expected to be assessed a mandatory fifteen- or eighteen-percent tip. Accordingly, the fact that tipping is a well-accepted social norm does not defeat Plaintiffs' claims.

### D. Does the Complaint Adequately Allege Harm under § 349?

Defendants' fourth (and strongest) argument is that Plaintiffs have not adequately alleged harm for their statutory misleading-business-practices claim. Specifically, Defendants argue that customers would have left a fifteen-to-eighteen-percent tip anyway, and therefore no customers were harmed.

---

[1] *See, e.g.*, *Tipping in Germany*, WhoToTip, http://www.whototip.net/tipping-in-germany (last visited January 4, 2018).

[2] *See, e.g.*, *Tipping in Japan*, WhoToTip, http://www.whototip.net/tipping-in-japan (last visited January 4, 2018).

"In order to assert a prima facie cause of action under General Business Law § 349, a plaintiff must be able to establish that a defendant intended to deceive its customers to the customers' detriment and was successful in doing so." *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81 (2008). "[P]roof that a material deceptive act or practice caused actual, although not necessarily pecuniary, harm is required to impose compensatory damages." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (internal quotation marks and emphasis omitted). Defendants argue that this last requirement—actual harm—was not adequately pleaded.

To understand this issue, it is worth delineating the three categories of harm that Plaintiffs could possibly be alleging. The first—and most ambitious—measure of harm is the cost of the entire meal plus the entire tip, on the basis that the customer might have left the restaurant had she known beforehand of the mandatory tip. The second—and less ambitious—measure of harm is the entire tip, on the basis that it was deceptively procured. Finally, the most modest measure of damages is the difference between the actual tip paid and the amount the diner would have paid if she were allowed to choose freely.

The first two types of harm appear not to be cognizable under § 349 because the statute covers only the amount that the consumer *overpaid*. A leading case is *Small v. Lorillard Tobacco Co.*, where the New York Court of Appeals upheld the dismissal of a § 349 claim that tobacco packaging misleadingly omitted facts about nicotine addiction. 94 N.Y.2d 43, 56 (1999). The plaintiffs had argued that, were it not for the misleading packaging, they would not have bought the cigarettes at all. However, the court held that argument insufficient, because the plaintiffs had not alleged "that the cost of cigarettes was affected by the alleged misrepresentation." *Id.*; *see also Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (App. Div. 3d Dep't 2007) ("Without further allegations that, for example, the price of the product was inflated

6

as a result of defendant's deception or that use of the product adversely affected plaintiff's health, plaintiff's claim sets forth deception as both act and injury and, thus, contains no manifestation of either pecuniary or actual harm." (quoting *Small*, 94 N.Y.2d at 56) (internal quotation marks omitted)).  Thus, since there is no allegation that the price of the food was inflated, the menu prices themselves are not part of the harm.  The same goes for consumers who would have tipped fifteen or eighteen percent anyway.

But Plaintiffs do state a potential § 349 claim for the third category—the narrow slice of people who would have tipped less than fifteen or eighteen percent but left a larger tip solely because of Applebee's payment system.  The Complaint plausibly alleges that these diners were deceived by Applebee's tipping structure, and that the deception inflated the price of their meal.  However, this kind of harm covers only the amount by which those diners overpaid.  For example, if a diner at the Broadway Applebee's would have tipped only ten percent, but was forced to pay fifteen percent because of the payment system, the measure of harm is the five percent that the diner overpaid.  *Compare, e.g.*, *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 416 (S.D.N.Y. 2004) (dismissing a § 349 claim because plaintiffs claimed that they were deceived into buying a product), *with Bildstein v. MasterCard Int'l, Inc.*, No. 03 Civ. 9826, 2005 WL 1324972, at *4 (S.D.N.Y. June 6, 2005) (holding that the amended complaint adequately stated a § 349 claim because it alleged that the deception actually inflated the purchase price). The Complaint adequately alleges that Plaintiffs went to the two restaurants, wished to leave a tip of less than fifteen or eighteen percent, but were effectively forced to pay a higher amount. (Compl. ¶¶ 51–52.)[3]

---

[3] Defendants' reliance on *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008), is misplaced, because the mandatory tips in that case were disclosed ahead of time.  The issue there was the labeling:  The waitstaff argued that labeling the mandatory tip a "gratuity" was

Accordingly, Plaintiffs' § 349 claims survive to the extent they allege that diners tipped more than they otherwise would have.

### E. Can Defendants Be Liable for Unjust Enrichment if the Tips Go to the Waitstaff?

Defendants' final argument is that they could not have been unjustly enriched, because all of the tips went to the waitstaff, not to Applebee's.

"Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, he must establish (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001). Defendants argue that the first element is not adequately pleaded since the Complaint does not allege that Applebee's kept the tips.

The Court is not convinced. A restaurant's management and its waitstaff do not exist on separate economic planes. If the waitstaff makes more in tips, the management might have to pay them less, particularly if the waitstaff makes less than minimum wage. *See, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 12, § 146–1.3 ("An employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips . . . ."). Therefore, management could have been enriched by the tips even if all the tips went to the

---

misleading, since not all of it went to the waitstaff. *See id.* at 75–76 ("[P]laintiffs assert that World Yacht manipulated the custom of tipping by representing to the customer that the gratuity was included in the ticket price but then only remitting to its employees a gratuity of between 4% to 7%."); *see also Sarmiento v. World Yacht Inc.*, No. 117224/05, 2006 N.Y. Misc. LEXIS 2419, at *9 (Sup. Ct. Aug. 10, 2006) ("The second cause of action asserts that World Yacht has violated GBL § 349 by representing to its patrons that an added charge was being imposed for service and gratuities, thus falsely suggesting that this added amount would be paid over to the wait staff.").

waitstaff.  The extent to which the management benefitted is a factual issue, and is therefore more appropriately decided after discovery has taken place.

**IV.     Conclusion**

For the foregoing reasons, Defendants' motion for judgment on the pleadings is DENIED.  The Clerk of Court is directed to close the motion at Docket Number 19.

SO ORDERED.

Dated: January 26, 2018
       New York, New York

_____
J. PAUL OETKEN
United States District Judge